**LEVEN et al. v. BIRRELL et al.**
**Civ. No. 49-324.**

United States District Court
S. D. New York.
July 11, 1949.

Geller & Saslow, New York City (Abraham N. Geller, and Robert B. Block, New York City, of counsel), for plaintiffs.

Archibald Palmer, New York City for defendant Universal.

LEIBELL, District Judge.

On March 4, 1949 the plaintiffs herein, stockholders of the defendant Universal Laboratories, Inc., commenced an action against certain individuals, certain corporations, and against Universal and Borden as nominal defendants, to recover money damages for the benefit of Universal Laboratories, Inc. In this action only two individual defendants have been served with process or appeared, Morris H. Gotthilf, a member of the Board of Directors of Universal Laboratories, Inc., since August 4, 1047 and Ruby Schinasi, a member of the Board of Directors from February 14, 1947 to August 4, 1947.

On May 14, 1949 the defendants Universal Laboratories, Inc., Borden Avenue Utilities Corp., a subsidiary, and Morris H. Gotthilf moved this Court for an order requiring the plaintiffs to file security in the sum of $50,000 for the reasonable expenses and attorneys' fees which may be incurred by the defendant Universal Laboratories, Inc., in its own behalf or for which Universal may become liable to the individual defendants. Universal, Borden and Gotthilf also moved for an order either staying or dismissing this action because of the pendency of the Birnbaum action in this Court.

The first part of this motion is based upon Sections 61-b and 64 of the New York General Corporation Law, McK. Consol. Laws, c. 23.[1]

---

1. "§ 61-b. Security for expenses

"In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the outstanding shares of any class of such corporation's stock or voting trust certificates, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require

The plaintiffs opposed the motion on the grounds (1) that Section 61-b of the New York General Corporation Law does not apply to cases in the federal courts where the jurisdiction is based upon diversity of citizenship; and (2) that the action is not against the individual defendants because of their acts or conduct while directors, officers or employees of Universal Laboratories, Inc., and that their expenses in the suit are not such as the corporation, Universal, may become liable for, under the terms of Section 64 of the statute.

■ The first ground of opposition has been disposed of by the decision of the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, wherein the Court held that a state statute [2] requiring the posting of security for the reasonable expenses, including counsel fees, which may be incurred by the corporation, and by other parties for which the corporation may become liable, in a suit instituted by a stockholder in behalf of the corporation, was applicable to such suits when brought in the federal courts on the jurisdictional grounds of diversity of citizenship.

This action is brought on behalf of and in the right of Universal and Borden, nominal parties defendant, and if the gravamen of the claims for relief against the individual defendants were a breach of their fiduciary duties while they were directors

---

the plaintiff or plaintiffs to give security for the reasonable expenses, including attorney's fees, which may be incurred by it in connection * * * therewith for which it may become subject pursuant to section sixty-four of this chapter, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive. Added L. 1944, c. 668; amended L.1945, c. 869, § 3, eff. April 18, 1945."

"§ 64. Assessment of expenses

"Any person made a party to any action, suit or proceeding by reason of the fact that he, his testator or intestate, is or was a director, officer or employee of a corporation shall be entitled to have his reasonable expenses, including attorneys' fees, actually and necessarily incurred by him in connection with the defense of such action, suit or proceeding, and in connection with any appeal therein, assessed against the corporation or against another corporation at the request of which he served as such director, officer or employee, upon court order, in the manner and to the extent provided by sections sixty-five, sixty-six and * * * sixty-eight of this chapter, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such officer, director or employee is liable for negligence or misconduct in the performance of his duties. Added L.1945, c. 869, § 4, eff. April 18, 1945."

2. Chapter 131, New Jersey Laws of 1945, N.J.S.A. 14:3–15, provides in pertinent part as follows:

1. "In any action instituted or maintained in the right of any domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation having a total par value or stated capital value of less than five per centum (5%) of the aggregate par value or stated capital value of all the outstanding shares of such corporation's stock of every class * * * unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars ($50,000.00), the corporation in whose right such action is brought shall be entitled, at any stage of the proceeding before final judgment, to require the complainant or complainants to give security for the reasonable expenses, including counsel fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to law, its certificate of incorporation, its by-laws or under equitable principles, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter, from time to time, be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

or officers of Universal Laboratories, Inc., then the action would be within the purview of Section 61-b, requiring the posting of security. On the other hand the requirements of Section 61-b do not apply to non-fiduciary defendants. Hornstein, in an article in 43 Columbia Law Rev. 301, 304 (1943), (Expenses in Stockholders' Suits) discusses the question as follows:—

"Non-fiduciary defendant. As has been stated, the legislation was sponsored avowedly for the purpose of acting as an inducement to persons who otherwise would not be likely to accept corporate directorship or officership. Consequently, despite the broad language of the statute, reimbursement has been refused in a stockholder's derivative suit to a defendant-employee who was neither director nor officer even though directors had also been named as defendants and had been reimbursed.[20] * Aside from the careless wording of the statute, the result is logical, since no reason appears for giving anything more than ordinary 'costs' to a successful non-fiduciary defendant, whether or not directors are also named as defendants. The statute, however, should be clarified to be beyond the necessity for 'interpretation' on this point. Lumping together all types of defendants may make the statute seem less discriminatory, but it also makes the statute much more difficult to justify as a matter of policy."

The *first cause of action* alleged in the complaint is brought on behalf of Universal against certain individual defendants [Lowell M. Birrell, David T. Bonner, Morris H. Gotthilf, Stewart B. Hopps, Ruby Schinasi, William B. Yeager] and certain corporate defendants [American Druggists Syndicate, Inc., International Utilities Corporation, Louisville Fire & Marine Insurance Company, Rhode Island Insurance Company, Securities Corporation General, The Greater New York Industries, Inc., Universal Laboratories, Inc. and Borden Avenue Utilities Corporation]. Schinasi was the only individual defendant served. Two corporate defendants, Greater New

York and International were also served.

The complaint alleges:—

"10. At all times hereinafter referred to, defendant Birrell, in association with defendants Bonner, Hopps, Schinasi and Yeager, dominated and controlled the business and affairs of defendant Greater New York by means of ownership, directly or indirectly, of the largest block of its voting stock; of constituting a majority at its stockholders' meetings; and of electing themselves and/or persons completely subservient to them as its directors and officers. At all times hereinafter referred to, the individual defendants named in this paragraph likewise dominated and controlled the business and affairs of defendant Louisville by means of ownership by defendant Greater New York of all or substantially all of Louisville's voting stock and of election as principal officers of Louisville of said individual defendants and/or persons completely subservient to them. At all times hereinafter referred to, said individual defendants likewise dominated and controlled defendants SCG, Rhode Island and International by means of ownership by said individual defendants, by defendant Greater New York, by defendant Louisville and by other persons, firms and corporations subservient to said individual defendants of the largest blocks of the voting stock of defendants SCG, Rhode Island and International; of constituting a majority at the stockholders' meetings of defendants SCG, Rhode Island and International; and of electing themselves and/or persons completely subservient to them as the directors and principal officers of defendants SCG, Rhode Island and International. The individuals and corporations named in this paragraph are hereinafter sometimes collectively referred to as the Birrell group.

"11. In or about the month of March, 1946, the Birrell group entered into a conspiracy with the then directors and officers of Universal and Borden to mulct Universal and Borden for the benefit, directly or indirectly, of the Birrell group and of Uni-

---

* "20. Roth v. Abrons,[1] April 15, 1942, Sup.Ct., Valente, J.; Gilbert v. Curtis-Wright Corp.,[1] 1943, Sup.Ct., Schreiber, J."

1. No opinion for publication.

versal's and Borden's directors and officers and otherwise to waste and divert Universal's and Borden's assets. Each director and officer of Universal and Borden who thereafter was elected or appointed as such became party to said conspiracy upon his assumption of office and thereafter with full knowledge of the facts, participated in and furthered said conspiracy."

"12. The inducements offered to and accepted by the directors and officers of Universal and Borden to participate in said plan and conspiracy included purchase of substantial blocks of Universal stock held by said directors and officers by the Birrell group at prices greatly in excess of fair and market value.

"13. On or about March 5, 1946, Universal and defendant Greater New York entered into an agreement for the purchase by defendant Greater New York from Universal of all the capital stock of Universal's wholly owned subsidiary, American Druggists, together with an account payable by American Druggists to Universal in the amount of $821,628.96. The price stipulated in said agreement was the sum of the following:

"a. An amount equal to net current assets over current liabilities of American Druggists as of December 31, 1945, excluding the aforementioned liability to Universal of $821,628.96 and excluding also machinery, equipment, furniture, fixtures, good will, patents and trademarks.

"b. An amount equal to the appraised value on closing of machinery, equipment, furniture and fixtures.

"c. $250,000 for good will, patents and trademarks.

"14. The good will, patents and trademarks of American Druggists had a fair value of at least $400,000, as was well known to all the defendants and to the then directors and officers of Universal.

"15. The transactions contemplated by said agreement dated March 5, 1946 were closed on or about April 19, 1946.

"16. On or about April 19, 1946, there was paid to Universal by defendant Greater New York the sum of $484,127.87, purportedly in satisfaction of the portion of the price referred to in subdivisions a and b of paragraph 13 hereof, after adjustments as of the closing date. At all times between March 5, 1946 and April 19, 1946. American Druggists was a solvent going concern. The said sum of $484,127.87 was purportedly arrived at by grossly undervaluing various of the substantial assets of American Druggists and by overstating various of its liabilities with the effect of ascribing to American Druggists a capital deficit of over $335,000. The amount actually due Universal for the portion of the price referred to in subdivisions a and b of paragraph 13 hereof, after adjustments as of the closing date, was at least $819,127.87, as was well known to all the defendants and to the then directors and officers of Universal.

"17. Upon said closing, defendant Greater New York delivered to Universal, for good will, patents and trademarks of American Druggists as referred to in subdivision c of paragraph 13 hereof, the promissory note of defendant Greater New York in the amount of $250,000, payable in twelve equal monthly installments commencing September 1, 1946.

"18. The transactions hereinbefore alleged were not negotiated or consummated at arms' length between Universal and defendant Greater New York but in pursuance of the plan and conspiracy alleged in paragraphs 11 and 12 hereof.

"19. By reason of the foregoing, Universal was damaged to the extent of $485,-000."

The American Druggists Syndicate deal, of which plaintiffs complain in the first cause of action, was completed on April 19, 1946. Schinasi was not a member of the Board of Directors until February 14, 1947. Although the 11th paragraph of the complaint does allege that each director furthered the conspiracy after his election, the American Druggist transaction was completed and the claimed loss sustained before Schinasi became a director, in fact before the Birrell group, of which allegedly he was a member, took control of Universal.

The *second "cause of action"* is brought on behalf of Universal solely against certain corporate defendants, Greater New York, American Druggists, International.

Louisville, Rhode Island and Securities Corporation General. No claim is made against any individual defendants. It charges that while the Birrell group were in control of Universal they designated American Druggists (a subsidiary of Greater New York) as Universal's sole distributing agent for its leading products to all independent retail drug stores, for which American Druggists was to receive 34% of net sales after credit for returns; that this constituted a complete waste and diversion of Universal's accounts, to the damage of Universal in the sum of $150,000. It is alleged that Schinasi and certain other individuals were members of Universal's Board when the contract was made; but no claim is asserted against any of them for breach of their fiduciary duties.

The *third "cause of action"* alleges a claim on behalf of Universal, solely against Morris H. Gotthilf, who has appeared herein. It relates to his sale of Smico common stock to Universal.

Paragraphs 32, 37, 38, 39 and 40 of the complaint allege this claim against Gotthilf as follows:

"32. On or about July 29, 1947, defendant Gotthilf presented an offer to the directors and officers of Universal to sell to Universal all the common stock of Smico, Inc. (a Delaware corporation), in exchange for 47,000 shares of Universal common stock and an assignment of said $250,000 promissory note payable to Universal and theretofore made and delivered by Greater New York."

"37. As defendant Gotthilf well knew:

"a. Said Sleight common stock was deficient in asset value to the extent of $29,091 and was worthless.

"b. Sleight's operations after taxes, was being conducted at a net loss.

"38. Said Gotthilf falsely and deceitfully represented to Universal's directors and officers, in making said offer that:

"a. The net worth of Smico, Inc. was approximately $300,000.

"b. The then annual net earnings of Smico, Inc. were approximately $100,000.

"39. In reliance upon said representations, Universal entered into, and thereafter, on or about August 4, 1947, performed a contract with defendant Gotthilf wherein and whereby there was sold to Universal by said defendant Gotthilf all the common stock of Smico, Inc. in exchange for 47,000 shares of Universal common stock and said $250,000 Greater New York promissory note.

"40. Said contract was entered into, and said sale was effected in pursuance thereof, in reliance upon the aforementioned representations made by defendant Gotthilf and said contract would not have been entered into and would not have been carried out but for said representations."

Apparently the contract for the sale of the Smico stock was completely performed on August 4, 1947, while the Birrell group were on the Board of Directors of Universal and before Gotthilf became a member of the Board on that same day. The gravamen of this claim against Gotthilf is not for breach of his fiduciary duties as either an officer or director of Universal.

The *fourth "cause of action"* is brought on behalf of Universal against the individual defendant Gotthilf, and against certain corporate defendants, Greater New York, International, Rhode Island, Securities Corporation General and Louisville. It incorporates, by reference, paragraphs 10 to 18 of the first cause of action and all of the second and third causes of action (paragraphs 21 to 30 and 31 to 42). It then alleges that—

"44. It was never intended by the Birrell group that the note of defendant Greater New York for $250,000, payable and delivered to Universal as aforesaid, be paid to any extent.

"45. Up to July 29, 1947, the directors and officers of Universal refrained from enforcement of said note against defendant Greater New York in pursuance of the plan and conspiracy alleged in paragraphs 11 and 12 hereof.

"46. Between on or about February 14, 1947 and August 4, 1947, a majority of the directors of Universal were the individual members of the Birrell group, to wit, said Birrell, Bonner, Hopps, Schinasi and Yeager, and said Birrell was chairman of the board of directors of Universal.

"47. Said note was valid and enforceable to its full extent as was well known to all the directors and officers of Universal who were such between the time of delivery of said note and August 4, 1947."

"53. On or about July 27, 1947, defendant Gotthilf, with full knowledge of the facts hereinabove alleged, entered into an agreement with the Birrell group wherein and whereby defendant Gotthilf was to procure the cancellation of said $250,000 note for the benefit of the Birrell group and was to purchase or cause to be purchased said 20,000 shares of Universal stock from defendants International, Rhode Island and SCG at prices in excess of then fair and market value. In consideration of said undertakings by defendant Gotthilf, the Birrell group simultaneously agreed to cause Universal to acquire from defendant Gotthilf worthless stock of Smico, Inc. (a Delaware corporation) in exchange for 47,000 theretofore unissued shares of Universal stock having a then fair and market value of approximately $247,000."

"62. All the foregoing facts were known to all the defendants and to all the directors and officers of Universal who were such between the time that said agreements were entered into and the time that they were carried out, and said directors and officers caused Universal to enter into and carry out said agreements in pursuance of the plan and conspiracy alleged in paragraphs 11 and 12 hereof.

"63. In entering into and carrying out said agreements, defendant Gotthilf knowingly abetted the conspiracy alleged in paragraphs 11 and 12 hereof and participated in and profited by breaches of fiduciary duty by the then directors and officers of Universal."

The acts complained of in the fourth cause of action which charges that the note of $250,000 made by Greater New York Industries was obtained from Universal as a result of Gotthilf's conspiracy with the Birrell group while that group controlled Universal's board of directors, were all allegedly committed before Gotthilf became a member of the Board of Directors on August 4, 1947. Although paragraphs 45, 46, 47, 62 and 63 thereof allege in effect that Schinasi, while a member of the board of directors of Universal participated in the furtherance of the conspiracy, which included the consummation of the deals mentioned in the Fourth cause of action, Schinasi is not named as a defendant in the fourth cause of action and no claim is made against him for his alleged breach of his fiduciary duties.

The *fifth "cause of action"* is brought on behalf of the defendant, Borden Avenue Utilities Corporation, (Universal's subsidiary) and is based upon a transaction which occurred between March 4, 1946 and January 10, 1947. Schinasi and other individual defendants are named as defendants. Certain corporations are also named as defendants. The defendant Schinasi is the only individual defendant named who has been served. The entire transaction took place before he became a member of the board of directors on February 14, 1947.

The fifth cause of action incorporates by reference paragraphs 10 to 13 and 15 of the first cause of action and alleges in effect the following:—That while Borden was dominated by the officers and directors of Universal it owned two adjoining parcels of land which were occupied without lease by Universal and American Druggist. On March 16, 1946 Borden agreed to sell both parcels to a purchaser for $440,000 and deliver occupancy of the buildings on closing of title. The Birrell group controlled American Druggist, a subsidiary of Greater New York which had agreed to vacate the building not later than June, 1946. The complaint then alleges:—

"75. Shortly after March 5, 1946, as was well known to the then directors and officers of Borden, the Birrell group, in anticipation of consummation of the agreement alleged in paragraph 13 hereof and in pursuance of the plan and conspiracy alleged in paragraphs 11 and 12 hereof, conceived the plan and design of obtaining substantial profits at Universal's and Borden's risk and expense in the following manner:

"a. By defendant American Druggists entering into a long-term lease of said Parcel A Premises occupied by it as aforesaid, to commence upon Borden's conveyance of Parcel A.

"b. By purchase by defendant SCG of Parcel A from Post and by the resale by defendant SCG of Parcel A, subject to said lease but to no other leases or tenancies, at a substantial advance in price.

"c. By Universal's removal from Parcel A prior to Borden's conveyance of Parcel A.

"d. By defendant American Druggists remaining in possession of said Parcel A premises occupied by it as aforesaid, pending Borden's conveyance of Parcel A, without lease and without payment of any rental therefor."

There are also alleged various transactions by which American Druggist would lease the space occupied by it from the purchaser and also loan the sum of $375,000 to the purchaser, secured by a mortgage. In the meantime SCG agreed to purchase the property from the purchaser and sell to another purchaser. SCG repudiated these contracts and the purchaser refused to close with Borden because of the continued occupancy of the building by American Druggists.

The complaint alleges:—

"90. The then directors and officers of Borden, with full knowledge of the facts hereinabove alleged and solely for the accommodation and intended benefit and profit of the Birrell group and defendant American Druggists and at their behest and in pursuance of the plan and conspiracy alleged in paragraphs 11 and 12 hereof, deliberately refrained from causing Borden to demand and enforce the payment of rent by defendant American Druggists; deliberately refrained from causing Borden to take steps to oust Defendant American Druggists from Parcel A in order to enable Borden to perform its said contract with Rivoli; and deliberately refrained from causing Borden to enforce against defendant Greater New York the provision of its said agreement with Universal dated March 6, 1946 and alleged in paragraph 71 hereof.

"91. The fair rental value of the said premises in Parcel A occupied by defendant American Druggists from April 19, 1946 to January 10, 1947 as aforesaid, was at least $47,000, no part of which had been paid by defendant American Druggists or for its account.

"92. Borden's loss of profit by reason of its inability to perform its said contract with Rivoli for the sale of Parcel A and Parcel B was in excess of $200,000.

"93. By reason of the foregoing, Borden was damaged in an amount in excess of $247,000."

The fifth cause of action specifically refers to the "then directors and officers of Borden Utilities" and does not appear to cover any period of time beyond January 10, 1947, and does not assert any claim against Schinasi for his acts after February 14, 1947 when he became a director of Universal and Borden.

The *sixth "cause of action"* brought on behalf of Universal is against Schinasi and certain individuals who have not been served. Certain corporations are also named as defendants. It incorporates by reference the allegations of paragraphs 10–13, 15, 20 and 66–75. It deals with a transaction which occurred and was consummated prior to the time Schinasi became a member of the board of directors. The sixth cause of action is really a continuation of the fifth but pleads additional facts on which an additional claim of damage is based. It alleges that in April 1946 Universal, in order to vacate the premises that were the subject of a contract of sale as alleged in the fifth cause of action, leased a plant and warehouse in New Jersey and paid about $21,252 in rent therefor up to October 30, 1946, without occupying the plant. It removed to the New Jersey plant on November 1, 1946 and by reason of the removal and suspension of its business, which it is alleged was caused by the Birrell group conspiracy in the Borden-Rivoli sale, Universal lost $50,000 in profits. No part of this transaction was alleged to have taken place after January 10, 1947. There is nothing in these allegations charging Schinasi with a breach of his fiduciary duty as a director.

The *seventh "cause of action"* is laid only against certain corporations and does not include any individuals as defendants, so it need not be discussed on this motion.

Paragraph 11th of the complaint (which is alleged in the first cause of action and included by reference in the Second, Fourth, Fifth and Sixth causes of action) states, in the first sentence, that in March 1946 the Birrell group entered into a conspiracy with the then directors and officers of Universal and Borden to mulct Universal and Borden for the benefit directly or indirectly of the Birrell group and of Universal's and Borden's directors and officers. The Birrell group (Birrell, Schinasi, Yeager, Bonner and Hopps) did not gain control and elect their own Board of Directors until February 14–26, 1947. The Birrell group remained in control until August 4, 1947, when Gotthilf's group (Gotthilf, Turner, Sloane, Lennon and Toole) took over. The second sentence of paragraph 11 alleges that "Each director and officer of Universal and Borden who thereafter (i. e. in and after March 1946) was elected or appointed as such became party to said conspiracy upon his assumption of office and thereafter with full knowledge of the facts, participated in and furthered said conspiracy".

Schinasi allegedly had become a member of the conspiracy in March 1946, so he did not become a party to it upon being elected a director February 14, 1947. He was already in it. Nor did he, as a director participate in and further what he had allegedly done as an individual between March 1946 and January 1947. The acts charged against Schinasi in the First, Fifth and Sixth causes of action were all allegedly performed beginning March 1946 and not later than January 10, 1947 (Sixth cause of action).

As to Gotthilf—he is named as a defendant in the third cause of action but paragraph 11 is not incorporated by reference in that cause of action. He is also named in the fourth cause of action and paragraph 11 is incorporated by reference in that cause of action. But as hereinbefore noted —the deal alleged in the Third cause of action, by which Gotthilf sold his Smico, Inc. stock to Universal (Smico was Gotthilf's holding company for his Sleight Metallic Ink Co. stock) was made by Gotthilf with the Birrell group in July 1947 and was performed by Universal on August 4, 1947 while the Birrell group were still directors of Universal, and before Gotthilf was elected a director of Universal on the same day, August 4, 1947. The deal Gotthilf made with the Birrell group, in relation to the $250,000 note of Greater New York Industries, Inc., as alleged in the Fourth cause of action, was also made by Gotthilf with the Birrell group in July 1947. By it Gotthilf obtained the note. It was all arranged and consummated before Gotthilf became a director of Universal on August 4, 1947.

As has been stated specifically as to the various causes of action, the two individual defendants who have been served or appeared, Schinasi and Gotthilf, are not sued because of acts they committed as fiduciaries at the time they were directors, officers or employees of either Universal or Borden. One who assists a fiduciary such as a director, to breach his duties as fiduciary, is liable to the injured party for the damage resulting from the fiduciary's dereliction, and he is also liable to account for any profits so made. Irving Trust Co. v. Deutsch, 2 Cir., 73 F.2d 121, and cases cited at p. 123. The complaint has been carefully drawn with an eye to avoiding the requirement to furnish a bond under § 61-b of the New York General Corporation Law. The pleader has succeeded in doing so because of the peculiar facts of this case. Universal accordingly is not entitled to a bond against any possible claim against it by Schinasi or Gotthilf under § 64 of the New York General Corporation Law for their reasonable expenses including attorneys' fees for the defense of this action.

The corporation, Universal, is entitled to a single bond (Borden is a subsidiary of Universal) for its expenses in defending this action. But those expenses cannot amount to much. Universal and Borden are nominal defendants. Indeed this representative action is brought for their benefit. Their position should be a neutral one. Apfel v. Auditore, 223 App. Div. 457, 228 N.Y.S. 489, affirmed 250 N.Y. 600, 166 N.E. 339; McCourt v. Singers-Bigger, 8 Cir., 145 F. 103, 7 Ann.Cas. 287; Washington, Stockholders' Derivative Suits, The Company's Role, 25 Cornell Law

Quarterly, 361. In addition to filing a formal answer and making the motion for a bond under § 61-b of the General Corporation Law, the nominal defendants need do nothing. A bond of $1,000 should be ample and that is the amount fixed.

Defendants' motion also seeks an alternative relief, for a dismissal of this action or a stay of this action on the grounds that there is another stockholders' suit Birnbaum v. Birrell pending in this court (in which the plaintiffs are represented by the same attorneys) involving similar charges and involving all of the defendants in this action. Birnbaum v. Birrell, Civil 43–725, 92 F.Supp. 275. The plaintiffs in the Birnbaum action are not parties to the present action. In the Birnbaum action the additional individual defendants are John Doyle, George R. P. Farquhar, Edward Gladhill, John Glossinger, Jack M. Goddard, Arnold M. Gotthilf, John V. Helberg, Joseph M. Jaffin, David F. Kemp, Louis Levinson, Charles Plohn, Frank J. Reddon, David H. Sloane, Theodore T. Toole, Frank R. Turner and Henry W. Wittner. All the corporate defendants in both suits are the same. Eleven of the twenty-two individual defendants in the Birnbaum action have been served with process.

In the Birnbaum action the prayer for relief asks for an accounting of profits received by the defendants, other than Universal and Borden, and judgment for losses sustained by those corporations. It also asks for cancellation and rescission of various agreements to which Universal or Borden were parties, in addition to judgment on the promissory note of $250,000. In the Leven action the prayer for relief asks for damages in the amounts alleged in each cause of action.

A motion to compel plaintiffs to give security pursuant to section 61-b of the New York General Corporation Law was made in the Birnbaum case in this court and was granted on June 29, 1949. The court's opinion (S.D.N.Y. Civ. 43–725, June 29, 1949) 92 F.Supp. 275 also states:—

"The defendant Universal has not acquiesced in plaintiffs' suggestion that the suit be dismissed. I see no reason, therefore, why such suggestion be entertained. If the defendant desires it may incorporate a condition with respect to dismissal in its order on this decision. The stay is continued meanwhile."

In these circumstances, the Birnbaum action, upon which the defendants base their request for dismissal or a stay of this Leven action, is itself stayed and is subject to a dismissal order pursuant to the decision of the court in that case. It would not be the exercise of a proper discretion, or of any discretion, to stay this Leven action under those circumstances. And of course the Leven motion should not be dismissed on any such plea. The charges made in this complaint are serious; they involve large sums; they should have a judicial determination.

Settle an order denying defendants' motion for a dismissal or stay of this action, and fixing the amount of the bond at $1,000.