Reuben P. GOLDSTEIN and Herbert W. Goepel, Plaintiffs,

v.

Milton C. WEISMAN, Murray C. Spett, Emanuel Celler, Samuel S. Allan, Arthur Sheinberg, Jack Vogel, Philip E. Kahn, Milton Altmark, Malcolm Gordon, Frank E. Howard, Sidney W. Leiberman, Crane Carrier Industries, Inc., David Shindler, Morris H. Gotthilf, Arnold M. Gotthilf, Henry I. Singer, Joseph Abrams and Harold H. Hyman, Defendants.

United States District Court
S. D. New York.
June 14, 1960.

Kaufman, Taylor & Kimmel, New York City, for plaintiffs. Shephard S. Miller, and Irwin M. Taylor, New York City, of counsel.

Winthrop, Stimson, Putnam & Roberts, New York City, for defendant Crane Carrier Industries, Inc. Merrell E. Clark, Jr., New York City, and Harry A. Garfield, New York City, of counsel.

Weisman, Celler, Allan, Spett & Sheinberg, New York City, for defendants Milton C. Spett, Samuel S. Allan, Milton Altmark and Arnold M. Gotthilf. Milton

C. Weisman, New York City, and Harry I. Rand, Washington, D. C., of counsel.

HERLANDS, District Judge.

This motion to compel the plaintiffs in a stockholders' derivative action to post security under Section 61-b of the New York General Corporation Law requires a consideration and application of the factors determining when and in what amount such security should be furnished. Since the controlling desiderata come into play only in the context of a particular litigation, it is necessary to subject the facts to close examination.

This stockholders' derivative action, commenced on November 30, 1959, is brought by two minority shareholders of Crane Carrier Industries, Inc. (hereinafter "Crane") on behalf of and for the benefit of Crane. The complaint names eighteen defendants: Crane and seventeen individuals. None of the individual defendants is presently a director, officer or employee of Crane.

The two plaintiffs together own 600 shares of Crane common stock having a market value of less than $1,800. The 600 shares are 2⁄100ths of 1 percent of the 2,661,228 outstanding shares of Crane's common stock.

Jurisdiction is based upon diversity of citizenship.

Thus far, only five defendants have been served and have entered an appearance: Crane, Murray C. Spett, Samuel S. Allan, Milton Altmark and Arnold M. Gotthilf.

The Motion at Bar

Pursuant to New York General Corporation Law, Section 61-b, Crane moves to require plaintiffs to post $70,000 as security for the reasonable expenses, including attorneys' fees, which may be incurred by Crane and by the other parties defendant. Crane also moves for a stay of all proceedings by plaintiffs in the action pending the deposit of the requested security. The four individual defendants appearing herein support Crane's application.

The Complaint

Twelve of the seventeen individual defendants are alleged to have served as directors of Crane at various dates between June 25, 1954 (the earliest date given) and September 3, 1957 (the latest date given); and three of the twelve were also officers of Crane (Complaint, pars. Eighth and Ninth).

Some of the defendants (Celler and Allan) were never directors or officers, but were members of the law firm that served as legal counsel to Crane at certain times (Complaint, par. Tenth).

The complaint refers to six of the defendants as the "Weisman Group" and four other defendants as the "Howard Group" (Complaint, pars. Eleventh and Twelfth).

The complaint (based upon information and belief) sets forth three unrelated claims as follows:

1. The First Claim

The first claim, charging a conspiracy, is set out in paragraphs Thirteenth to Thirty-Seventh. It names nine persons as defendants (Morris H. Gotthilf, Arnold M. Gotthilf, David Shindler and "The Weisman Group," consisting of six defendants). Additional alleged conspirators are named but not as defendants.

The charges levelled against the defendants must be examined closely in order to determine just what the named defendants are accused of and in what capacity they are alleged to have acted.

The words and phrases describing the defendants' alleged acts and their alleged capacities must be gathered from various paragraphs of the complaint and then assembled in order to solve a jigsaw puzzle of pleading. As pieced together, the first claim makes the following assertions:

Shindler "exercised control," had "actual control," and had "participation in control" of Crane during a period of time starting "prior to December 15, 1953" and continuing up to "in or about April 1954." During that period, Shindler was

employed at a monthly salary of $1,250 by Crane "to obtain for it profitable acquisitions," i. e., "to acquire for the company the acquisition of other profitable companies." For these services Shindler "caused" Crane to pay him $1,250 monthly. In addition, Shindler "caused" Crane to engage the services of a person who acted as Shindler's representative and who also acted as "chief executive officer of Crane during 1953 and during the early part of 1954."

The following relationships existed between the defendants: Defendant Morris H. Gotthilf was the uncle of defendant Shindler and the father of defendant Arnold M. Gotthilf. The latter was Shindler's partner in an accounting firm. Shindler was a personal friend and business associate of defendant Spett, defendant Weisman and one Milton Altmark (the latter not being named as a defendant in the first claim). In December 1953, "the law firm of which Spett and Weisman were members were the attorneys for Crane."

An alleged conspiracy to defraud Crane was formed and carried out in stages as follows:

A. On or about December 2, 1953, defendant Morris H. Gotthilf contracted to acquire the stock of Watson Elevator Company (hereinafter "Watson") from Watson's stockholders.

B. On or about December 11, 1953, defendant Shindler, the two defendants Gotthilf, the defendants Spett and Weisman, and Altmark caused to be formed a corporation known as Cadilly Holding Corporation (hereinafter "Cadilly") in order to acquire the Watson stock that defendant Morris H. Gotthilf had contracted to acquire. At about the same time, the latter individual assigned his interest in the Watson stock contract to Cadilly.

C. On or about December 15, 1953, defendant Shindler "caused the board of directors of Crane to consider the acquisition" of Cadilly stock in exchange for 750,000 shares of Crane to Cadilly stockholders and Crane's assumption of notes payable to Watson. On or about January 6, 1954, Crane's board of directors authorized the Watson stock acquisition deal.

D. In or about April 1954, 750,000 shares of Crane stock were issued to Cadilly's stockholders; and Crane "was caused to spend at least $867,000 in excess of the actual fair price of the acquisition of the stock of Watson."

E. The 750,000 shares of Crane stock were "received" by defendants Morris H. Gotthilf, Spett and Weisman, by Altmark, and by other persons, firms and corporations variously described as relatives, friends and associates of the named defendants. Lumping all of these defendants and the other persons together, they made profits of several million dollars through the deal.

F. At the times of the various transactions involved in the foregoing deal, (i) the "Weisman Group" was "in collusion with Shindler and had acquired actual control of Crane"; (ii) the "Weisman Group," Shindler and "other persons" associated with them controlled Cadilly; (iii) Spett, Weisman and their law firm were Crane's attorneys; (iv) Shindler, Spett, Weisman "and the persons associated with them" were members of "a conspiracy * * * to defraud Crane of its property by diverting from it to Cadilly the business opportunity of acquiring Watson, for the personal benefit and enrichment of" the co-conspirators; (v) Shindler violated his "duty to Crane of obtaining acquisitions for it on the best possible terms"; (vi) Spett, Weisman and their law firm violated their "duties and obligations owed to Crane and its stockholders" as Crane's attorneys; and (vii) all of the alleged foregoing acts were done in furtherance of the alleged conspiracy.

### 2. The Second Claim

This claim is set forth in paragraphs Thirty-Eighth to Fifty-Second of the complaint. The transaction and related acts that are the gravamen of this claim took place in March and April 1955. At that time, according to paragraph Eighth

of the complaint, the following defendants in the second claim occupied official positions in Crane: Weisman, director and chairman of the board; Spett, director and executive vice-president and treasurer; Sheinberg, secretary; and Kunka, director. Defendants Singer, Abrams and Hyman were "the principals" of Connor-Wilson Corporation and its affiliate, Active Trading Corporation (both hereinafter referred to as "Connor-Wilson").

The claim charged "a conspiracy between the Weisman Group of directors and the principals of Connor-Wilson Enterprise to defraud Crane of its property by causing it to pay an excessive amount for the assets" of Connor-Wilson acquired by Crane; "all to the personal profit and enrichment of the said principals of the Connor-Wilson Enterprise and the Weisman Group of directors." Crane's damages caused by the alleged conspiracy amounted to $141,945.53.

It is alleged that defendant Spett was "personally acquainted" with defendant Abrams; that the Weisman law firm was "counsel to Crane"; and that said law firm had "from time to time" acted as counsel to "one or more" of the principals of Connor-Wilson.

The alleged conspiracy is detailed as follows:

On March 31, 1955, the Crane board of directors ("then in control of the Weisman Group") authorized the execution of an agreement for Crane to acquire the business and assets of Connor-Wilson in exchange for the issuance of 213,000 shares of Crane stock, plus an additional number of Crane shares to be computed as per a formula agreed on. On March 31, 1955, Crane's board authorized the issuance of the requisite number of shares.

### 3. The Third Claim

This claim is set forth in paragraphs Fifty-Third to Sixtieth. The charge is a conspiracy that took place and was consummated on June 11, 1957. The gist of the alleged conspiracy is that the "Weisman Group," while being "officers, directors and fiduciaries of Crane," conspired to and did [i] resign and abdicate their official responsibilities vis-a-vis Crane, [ii] transfer control of Crane to the "Howard Group," [iii] sell "most of their stock in Crane to Howard," [iv] receive a consideration "over and above the value of any stock they owned," which consideration "was actually paid for their resignation as above alleged, and for the aforesaid transfer of control." The positions held in Crane by the "Weisman Group" and "the control appurtenant thereto" were, it is asserted, "assets" of Crane that were "wrongfully sold and transferred" in violation of their "duty as directors, officers and fiduciaries of Crane" and "for the personal benefit of the "Weisman Group."

### Answer of the Four Individual Defendants Appearing Herein

In their answer filed on December 21, 1958, the four individual defendants served and appearing herein deny the material allegations of the complaint and plead eleven separate defenses. Two of the defenses (Tenth and Eleventh) charge that the action is brought as the result of activities constituting champerty and abuse of process.

### Depositions Noticed by Plaintiffs and Individual Defendants

The individual defendants who have appeared in the action have noticed the taking of the depositions of the two individual plaintiffs, of the three members of the law firm representing the plaintiffs, and of defendant Crane through its president, its chairman of the board, its vice-president and treasurer, and "other officers and directors."

Plaintiffs have noticed the taking of the depositions of defendants Spett and Arnold M. Gotthilf.

Thus, depositions have already been noticed of ten named individuals and additional unnamed officers and directors of Crane. There is reasonable probability that further depositions will be taken of other individuals described in

the complaint as participants in the three transactions under attack.

## The Moving Papers

In support of its request that security be fixed in the amount of $70,000, Crane adverts to "the magnitude of the case, the number of the depositions to be taken, and the complexity of the issues," as well as to the circumstances that Crane's principal place of business is in Tulsa, Oklahoma, that the transactions under attack cover a period of six years, that "difficult questions of law" are involved in determining the nature of the duties owed to Crane by various defendants, and that the facts entail "such troublesome matters as determining valuation of corporate securities and assets."

As to the plaintiffs' first and third claims, Crane's position is "that no conduct of the defendants as officers or directors is involved, so that Crane Carrier would not be liable for the expenses of defending against those causes of action. However, it is possible that Crane Carrier's view of this matter will not prevail, and certainly it is entitled to be protected against the possibility that it might be held liable for the [individual] defendants' expenses and fees with respect to these causes of action."

The individual defendants appearing herein claim that they "would be entitled to reimbursement of their expenses from Crane as to all three causes of action stated."

As to the plaintiffs' second claim, Crane's position is that it is brought against the defendants named therein "by reason of their having been officers or directors of Crane Carrier. Under these circumstances, they would appear entitled to have their reasonable expenses, including attorneys' fees, assessed against Crane Carrier, both under the by-laws of Crane Carrier and under Section 64 of the New York General Corporation Law."

Moreover, Crane's general position in this action is said by it to be "independent and impartial." Crane emphasizes the fact that "none of the defendants against whom relief is sought are presently connected in any way with the management of Crane Carrier" and that they "have not held any such [as directors or officers] positions with the corporation since 1957."

Crane also points to the fact that "*prior* to the institution of the action Crane Carrier caused its own independent investigation to be made of the matters set forth in the first two causes of action of the complaint." (Emphasis supplied.) This investigation was carried out "by attorneys and by private investigators retained by the corporation." What, if anything, that investigation uncovered is not indicated, directly or indirectly. Nor is the nature, extent and period of such investigation detailed by Crane.

Crane does declare that its "purpose in making the instant motion is not to discourage or impede plaintiffs in the prosecution of this action. Its purpose is simply to protect itself in so far as possible from substantial liability to defendants for the expenses, including counsel fees, if plaintiffs are unsuccessful."

Finally, Crane underscores the belief of its board of directors that "its attorneys should not be restricted to simply 'nominal' representation." This belief is elaborated in Crane's own words as follows:

"Our attorneys should protect the corporation and its officers from all unnecessary interference with regular business operations. In addition, they should keep the corporation advised as to the progress of the action and as to the position which the corporation should take, in its own best interest, with respect to issues arising in the case, possible settlement proposals, and the like.

"In order for counsel to carry out these functions they must attend the depositions, study the documentary evidence, be familiar with the applicable law—in short, participate fully in the action."

The individual defendants appearing herein express the following view of the work entailed in the defense of this action:

"In order to defend this action, it will be necessary to inquire fully into the financial status of Crane and each of the other corporations whose acquisitions are referred to in the complaint, for periods extending as far back as six years. Such an inquiry must involve an expert analysis of the books and records of Crane and each of the other corporations and may require, as well, oral examinations of the present and former officers, employees, accountants, etc., of these various corporations. The books and records which will have to be examined, and the persons whose testimony may be required, are located, as we are informed, in Tulsa, Oklahoma, Scranton, Pennsylvania, New Bremen, Ohio and New York City. It may be found that records and witnesses are located as well in other areas. Thus, considerable time, travel and expenses will be involved in preparing the defense."

The Controlling Statute as Construed

General Corporation Law, Section 61-b, provides:

"In any action instituted or maintained in the right of any foreign or domestic corporation by the holder or holders of less than five per centum of the outstanding shares of any class of such corporation's stock or voting trust certificates, unless the shares or voting trust certificates held by such holder or holders have a market value in excess of fifty thousand dollars, the corporation in whose right such action is brought shall be entitled at any stage of the proceedings before final judgment to require the plaintiff or plaintiffs to give security, for the reasonable expenses, including attorney's fees, which may be incurred by it in connection with such action and by the other parties defendant in connection therewith for which it may become subject pursuant to section sixty-four of this chapter, to which the corporation shall have recourse in such amount as the court having jurisdiction shall determine upon the termination of such action. The amount of such security may thereafter from time to time be increased or decreased in the discretion of the court having jurisdiction of such action upon showing that the security provided has or may become inadequate or is excessive."

In Cohen v. Beneficial Indus. Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, the Supreme Court declared:

"[I]t creates a new liability where none existed before, for it makes a stockholder who institutes a derivative action liable for the expense to which he puts the corporation and other defendants, if he does not make good his claims. Such liability is not usual and it goes beyond payment of what we know as 'costs.' If all the Act did was to create this liability, it would clearly be substantive. But this new liability would be without meaning and value in many cases if it resulted in nothing but a judgment for expenses at or after the end of the case. Therefore, a procedure is prescribed by which the liability is insured by entitling the corporate defendant to a bond of indemnity before the outlay is incurred. We do not think a statute which so conditions the stockholder's action can be disregarded by the federal court as a mere procedural device." 337 U.S. at pages 555–556, 69 S.Ct. at page 1230.

■ The application of Section 61-b in diversity cases is mandatory upon this court. 2 Hornstein Corporate Law and Practice (1959) Section 722, n. 77; Birnbaum v. Birrell, D.C.S.D.N.Y.1949, 92 F. Supp. 275; Leven v. Birrell, D.C.S.D.N. Y.1949, 92 F.Supp. 436, 438; Fielding v. Allen, 2 Cir., 1950, 181 F.2d 163, 168,

certiorari denied, sub nom. Ogden Corp. v. Fielding, 1950, 340 U.S. 817, 71 S.Ct. 46, 95 L.Ed. 600; Fuller v. American Machine & Foundry Co., D.C.S.D.N.Y. 1950, 91 F.Supp. 710, 711; Levenson v. Little, D.C.S.D.N.Y.1950, 90 F.Supp. 1022, 1023; Steinberg v. Adams, D.C. S.D.N.Y.1950, 90 F.Supp. 604, 609; Schreiber v. Butte Copper & Zinc Co., D.C.S.D.N.Y.1951, 98 F.Supp. 106, 110; Selman v. Colborn, D.C.S.D.N.Y.1956, 143 F.Supp. 112; Dalva v. Bailey, D.C. S.D.N.Y.1957, 153 F.Supp. 548, 550; Neuwirth v. Namm-Loeser's, D.C.E.D.N. Y.1958, 161 F.Supp. 828, 830; Bauer v. Servel, Inc., D.C.S.D.N.Y.1958, 168 F. Supp. 478. See 52 Col.L.Rev. 267, Security For Expenses Legislation (1952) at 275, note 41.

Crane's Own Expenses

█ It appears that the corporate defendant, being completely independent of the individual defendants, cannot be brushed aside as an inactive or passive defendant. Through its own attorneys, it is entitled to participate actively in all phases of the litigation.

However, even prior to the commencement of this action, Crane investigated the matters embraced within the plaintiffs' first two claims. Just how much additional work and preparation must be done with respect to those claims now that plaintiffs have brought this action, does not affirmatively appear.

██ Whether the corporate defendant is only a "nominal" defendant and hence entitled only to insubstantial security *for its own expenses* depends upon the extent to which the interests of the corporation are threatened by the action. See Note, Security for Expenses Legislation, 52 Col.L.Rev. 267, 276–277 (1952). The papers and arguments submitted in behalf of Crane do not even attempt to demonstrate that the interests of the corporation are threatened by the action. Crane's asseverations of "impartiality," augmented by its declaration that it does not desire by this motion to discourage or impede the plaintiffs in the prosecution of this action, permit the rational in-

ference that Crane does not regard plaintiffs' action as endangering rather than advancing the corporation's interest. To the extent that there is any competent evidence or even good hearsay in the record, there is no basis, at this time at least, for a definitive conclusion that the interests of the corporation are threatened by the action. It is not now entitled to substantial security for its own expenses.

Indeed, Crane's primary and material argument is, in its own words, "to protect itself in so far as possible from substantial liability to [the individual] defendants for the expenses, including counsel fees, if plaintiffs are unsuccessful." Thus, the critical issue is whether Crane is entitled to security for the reasonably-to-be anticipated or probable expenses of the individual defendants on the ground of potential corporate liability for those expenses.

Expenses of Individual Defendants With Respect to the First Claim

█ The analysis (supra, 185 F.Supp. at page 244 et seq.) of the plaintiffs' first claim demonstrates that none of the defendants are charged in that claim with having served as or acted in the capacity of directors, officers or dominant stockholders of Crane at the time of the criticized transactions.

Although the first claim states that it is asserted against Norris H. Gotthilf, Arnold M. Gotthilf, Shindler "and the Weisman Group," the formal prayer for relief [A] seeks judgment against "Jaeckel," who is not named in the title of the action and is not named in the statement of the first claim; and [B] does not seek judgment against Celler and Allan, who are members of the so-called "Weisman Group," according to paragraph Eleventh of the complaint.

According to the complaint's prayer, plaintiffs seek judgment against seven defendants: the two Gotthilfs, Shindler, Weisman, Spett, Sheinberg, and Kunka, requiring them to account for their and their associates' profits and for Crane's losses. But of these seven defendants,

only two (Arnold M. Gotthilf and Spett) have thus far been served and have appeared herein.

Crane agrees with plaintiffs that it "would not be liable for the expense of defending against" the first claim, though it seeks "to be protected against the possibility that it might be held liable" therefor. Of the defendants against whom the first claim is asserted, the only person possibly coming within the category of "director, officer or employee" (as used in Sections 61-b and 64 of the New York General Corporation Law), at the times mentioned in the first claim, is defendant Shindler.

The foremost authority on stockholders' derivative actions has stated that Section 61-b of the General Corporation Law does not apply to "non-fiduciary defendants" notwithstanding the use of the generic term "employee" in Section 64 of the General Corporation Law and the unrestricted words "the other parties defendant" in Section 61-b itself. 2 Hornstein, Corporation Law and Practice (1959) Section 722, n. 84. Professor Hornstein's well-known position on this subject had been quoted with approval by Judge Leibell in Leven v. Birrell, D.C.S.D.N.Y.1950, 92 F.Supp. 436, 439.

This court likewise approves the reasoning underlying the foregoing views. Adopting that rationale, this court is of the opinion that Sections 61-b and 64 of the New York General Corporation Law would apply to a person who is technically an "employee" and not a director or officer but who—like defendant Shindler, according to the complaint herein—was in control of the corporation through his control of its chief executive officer and its board of directors. However, as noted, Shindler has not been served and has not appeared herein.

### Expenses of Individual Defendants With Respect to the Second Claim

The heading of the second claim states that it is against the "Weisman Group,"

Henry I. Singer, Joseph Abrams, and Harold H. Hyman. The formal prayer for judgment seeks relief from eight defendants: Weisman, Spett, Sheinberg, Kunka, Singer, Abrams, Hyman, and Jaeckel. Jaeckel is not named as a defendant in the title of the action or in the statement of this claim. On the other hand, Celler and Allan, who are described as members of the "Weisman Group," are not named as defendants against whom judgment is demanded.

There is no doubt that defendants who allegedly were, at the time of the criticized transactions, directors or officers (i. e., Weisman, Spett, Sheinberg, and Kunka) would come within the coverage of Sections 61-b and 64 of the New York General Corporation Law. Of these, only Spett has been served or has appeared.

### Expenses of Individual Defendants With Respect to the Third Claim

The statement of this claim recites that it is against "The Weisman Group and the Howard Group." The judgment formally prayed for asks for relief against Weisman and Spett, but not against Celler, Allan, Sheinberg, and Kunka (although the latter four are said to be members of the "Weisman Group"). Relief is also prayed for against the four members of the "Howard Group": Gordon, Vogel, Kahn, and Howard. The prayed for judgment is for an accounting by Weisman and Spett and the "Howard Group" defendants for their profits and for the losses suffered by Crane. Spett is the only defendant involved in this claim who has been served or who has appeared herein.

The analysis of the third claim (supra, 185 F.Supp. at page 246 et seq.) indicates that its "theory"[1] may be based on the doctrine of Perlman v. Feldmann, 2 Cir., 1955, 219 F.2d 173, 50 A.L.R.2d 1134, certiorari denied, 1955, 349 U.S. 952, 75 S.Ct. 880, 99 L.Ed. 1277. See Berle, Legal Problems of Economic Power, 60 Col.L.Rev. 4, 22 (1960);

[1]. On the federal distinction between "claim," "cause of action" and "theory," see Original Ballet Russe v. Ballet Theatre, 2 Cir., 1943, 133 F.2d 187, 189–190; Schwartz v. Eaton, 2 Cir., 1959, 264 F.2d 195, 196–197.

Hornstein, Corporation Law and Practice (1959), vol. 1, Section 366, notes 46, 48, 50, 51, 60; vol. 2, Section 731, note 81. If such be the "theory," any recovery might well be in the plaintiffs' own right as minority stockholders "instead of in right of the corporation (as in the usual derivative actions)." Perlman v. Feldmann, supra, 219 F.2d 178. Compare the majority opinion per Chief Judge Clark (219 F.2d at page 178) with the dissenting opinion of Judge Swan (219 F.2d at page 180). See analysis in 2 Hornstein, supra, Section 731.

It thus appears that, with respect to the four individual defendants who have appeared:

1. Judgment is demanded against Spett with respect to the three claims.

2. Judgment is not demanded against Allan on any of the claims.

3. Judgment is not demanded against Altmark on any of the claims.

4. Judgment is demanded against Arnold M. Gotthilf only with respect to the first claim.

■ For purposes of the present motion, the court cannot assume that other defendants will be served and appear or that an amended complaint will be served or that the present complaint will be attacked for any possible defects therein. The court must dispose of the motion on the basis of the record as it now stands.

■ In light of the analysis set forth in this opinion, the court hereby grants Crane's motion. Plaintiffs shall furnish security in the sum of $5,000 for the reasonable expenses, including attorneys' fees, of Crane and the individual defendants appearing in this action at this time. Pending the posting of such security, the stay of all proceedings by plaintiffs shall continue. This decision is without prejudice to the right of any party to move for a modification of the amount of such security "upon showing that the security provided has or may become inadequate or is excessive." New York General Corporation Law, § 61-b.

Settle order on notice within five days from the date hereof.