ESSENTIAL ENTERPRISES CORPORATION, a corporation of the State of Delaware,
Plaintiff,

*vs.*

THE DORSEY CORPORATION, a corporation of the State of Delaware, FRANK B. JOHNSTON, JOHN R. MAHER, HENRY G. HOTCHKISS, G. CLAYTON IRWIN, GLEN G. DICKER and JOHN E. MASSENGALE, Defendants.

*New Castle, June 1, 1962.*

*Louis J. Finger,* of Richards, Layton & Finger, Wilmington, for plaintiff.

*Richard F. Corroon,* of Berl, Potter & Anderson, Wilmington, for defendants.

SEITZ, Chancellor: By this action, plaintiff, Essential Enterprises Corporation, sought a declaratory judgment that a certain portion of an assumption of liability agreement ("transfer agreement") was invalid and not binding on it. Next, it sought a judgment against the corporate defendant for liabilities illegally transferred to plaintiff and a determination that defendant corporation, Dorsey Corporation

("Dorsey") be required to hold plaintiff harmless as to any liabilities caused by such transfer. Plaintiff also requested an accounting from the individual defendants for certain damages sustained by plaintiff in connection with allegedly improper corporate payments.

Dorsey was formerly named Allied International Investment Corporation ("Allied"). Its name was changed following a judicially approved compromise of *Civil Action* 1082, which was a stockholders' action against these individual defendants. The individual defendants were directors of plaintiff. All except Massengale were also directors of Dorsey at the times complained of.

This case was tried and the court heretofore ruled in an unreported opinion that the terms of the compromise of *Civil Action* 1082 as implemented by the transfer agreement contemplated that Dorsey was to get the corporate shell of Allied with $300,000 cash "net". It turned out that the assets of Allied other than the Automatic stock which it held were not sufficient to pay all liabilities and leave a net of $300,000 for Dorsey. I decided that the transfer agreement was valid and that the proper liabilities which could not be paid and leave Dorsey with $300,000 net were validly transferred to plaintiff. Unless the parties desire to argue this further, I assume that this prior holding, which I reaffirm, removes Dorsey from a position of liability on any of the items hereinafter considered.

In the unreported opinion I also ruled on certain specific items which plaintiff claimed were not proper obligations of Allied and thus not properly transferred under the transfer agreement. After the unreported opinion was released a motion was filed seeking further findings and rulings and the court in effect granted the motion by directing the filing of supplemental briefs. This is the decision thereon.

I first consider whether the legal fees paid or incurred by Allied or the individual defendants in connection with *Civil Action* 1082 were proper and in effect were properly transferred to plaintiff. The most substantial legal bills involved are those of a New York law firm ("Lowenstein firm"). The defendant Hotchkiss is a partner in that firm. The parties have identified the portions of the Lowenstein bills which are in dispute.

[■] Defendants contend that the allegations of the amended supplemental complaint did not fairly advise them that at the trial one of the issues to be tried was whether the legal fees chargeable to *C.A.* 1082 were incurred for an improper purpose. The amended complaint alleged that "Included in the liabilities which defendants have attempted to impose upon plaintiff are the following which cannot properly be charged to plaintiff even under the terms of the transfer agreement." There were then listed, inter alia, the various Lowenstein invoices under attack. The large charges in those bills are also alleged to be excessive. There was much "backing and filling" in this case as to the theory of plaintiff's claims. It is not even now entirely free from doubt. I do believe, however, that the pleadings and trial raised more than just the issue of the reasonableness of the amount of some of the Lowenstein charges. Plaintiff made it clear that it attacked the "validity" of the charges. It follows that plaintiff is entitled to question the Lowenstein legal bills on what defendants call the "improper purpose" theory.

A portion of the Lowenstein billings was for legal services rendered prior to the institution of *C.A.* 1082. To the extent they were rendered in connection with the transaction subsequently attacked in *C.A.* No. 1082, the first question which would normally arise would be whether the defendant directors properly incurred them on behalf of the corporation. To answer this question one would expect to decide whether the proposed transaction which required the legal services was for a proper corporate purpose.

The complaint in *C.A.* 1082 primarily attacked the propriety of the corporate purpose of a portion of the transaction (Automatic stock distribution) and charged that it was to serve the purely personal purposes of its then president. It was also claimed that this was known to the other defendant directors.

After a restraining order had been issued, the case was settled and the settlement was judicially approved. By the terms of the settlement the defendants were permanently enjoined from carrying out the transaction as proposed, otherwise the complaint was dismissed. The settlement carried out the so-called "Dorsey deal" portion of the transaction but changed the plan dealing with the Automatic stock dis-

tribution. The settlement terms did not impose any personal liability on the individual defendants.

The plaintiff says the terms of the approved settlement constituted an adjudication that the major portion of the transaction under attack was for a personal rather than a corporate purpose. Plaintiff say that it follows that the legal expenses incurred in that connection for the period prior to the institution of the action were therefore improperly incurred and the individual defendants are responsible to the plaintiff therefor.

I conclude that even though the approved settlement contained a consent permanent injunction it did not constitute a determination of liability, at least for purposes of deciding whether the legal services were incurred in furtherance of an improper corporate purpose. I say this because a settlement is the antithesis of an adjudication. Moreover, the hard fact is that the case was never tried and many of the material facts were denied by defendants. Certainly, the restraining order was not a final determination of the issue.

Having decided that the approved settlement in *Civil Action* 1082 did not constitute a determination that the identified charges incurred on its behalf were improper, the next question is whether plaintiff may now have that issue decided in this action. I am satisfied that this court is not now free to litigate such issue. I say this because the court could not decide whether those charges were properly incurred until it tried and decided whether or not the transaction was for a proper corporate purpose. Yet, the transaction under attack was settled and approved. It would, in effect, impinge on the terms of the settlement to permit the plaintiff to litigate now the propriety of the individual defendants' actions when, as here, the settlement embraced the very transaction which would have to be reviewed.

I therefore conclude that the judicially approved settlement in *Civil Action* 1082 precludes plaintiff from recovering from the individual defendants any money allegedly improperly disbursed for the identified legal services incurred for the period prior to the institution of *Civil Action* 1082. To the extent, if any, that such charges are unpaid they are the obligation of plaintiff.

I next consider the bills for legal services to the extent they cover the period subsequent to the commencement of *C.A.* 1082 and up until the approval of the settlement.

Contrary to defendants' contention, I conclude that the final disposition of *Civil Action* 1082 by a court approved settlement did not bar and estop plaintiff (Allied's successor) from seeking to hold Allied's directors liable for legal fees incurred by Allied in connection with the litigation. I so conclude because the terms of the settlement did not embrace causes of action of that nature and the settlement did not otherwise fairly encompass them.

I next consider defendants' contention that Allied's idemnification by-law and the Delaware idemnification statute (8 *Del.C.* § 122(10)) justified the payment of the legal fees charged for the representation of the defendant directors. It appears that Allied paid some of these fees and has been billed for the balance. At this point, I am not concerned with the services allegedly rendered the Corporation.

The issue is whether under the facts in *C.A.* 1082 the defendant directors are entitled to indemnification. The defendant directors were charged, inter alia, with taking action which was not for a proper purpose but was in fact for the improper and individual purpose of permitting one of the defendants to retain control of the company (Automatic) whose majority stock was owned by Allied. The others were charged with knowledge of the scheme. The positions of the parties are best understood by first considering the language of the pertinent statute and by-law.

■ Our statute (8 *Del.C.* § 122) provides in pertinent part:

"Every corporation created under the provisions of this chapter shall have power to—* * *

"(10) Indemnify any and all of its directors or officers or former directors or officers or any person who may have served at its request as a director or officer of another corporation in which it owns shares of capital stock or of which it is a creditor against expenses actually and necessarily incurred by them in

connection with the defense of any action, suit or proceedings in which they, or any of them, are made parties, or a party, by reason of being or having been directors or officers or a director or officer of the corporation, or of such other corporation, except in relation to matters as to which any such director or officer or former director or officer or person shall be adjudged in such action, suit or proceeding to be liable for negligence or misconduct in the performance of duty. Such idemnification shall not be deemed exclusive of any other rights to which those idemnified may be entitled, under any by-law, agreement, vote of stock-holders, or otherwise."

The quoted statute clearly gives the corporation the power to indemnify its directors except when they shall have been "adjudged in such action, suit or proceeding to be liable for negligence or miscon-duct in the performance of duty". The statute is not an automatic indemnification provision. It must be implemented by appropriate corporate action. It is further apparent that were this court concerned only with the statute a question would arise as to whether the statutory limitations on the right to grant indemnification have any application to a settlement because of the use of the word "adjudged" in the statute. More specifically, this court would have to consider whether this settle-ment in fact constituted an adjudication because of the perpetual in-junction contained therein. But because of my interpretation and application of Essential's by-law I pass over this issue.

█ Allied had a by-law which provided as follows:

"Art. II—Section 13. Indemnification of Directors. The Corporation, as additional compensation and without prejudice to any other legal rights of the Directors, does hereby indemnify each present, past and future Director of the Corporation against his reasonable expenses, including counsel fees, incurred in connection with any suit or proceeding at any time instituted against him by reason of his being or having been a Director of the Corporation; provided, however, that this indemnity shall not extend to any case where such Director shall be finally adjudged in any suit or proceeding to be liable because of failure

in the performance of his duties as a Director, or to any compromise of any such liability."

Parenthetically, it may be noted that the by-law, in contrast with the statute, "automatically" indemnifies directors, but no officers, under certain conditions. While the by-law states that it is "without prejudice to any other legal rights of the Directors", the defendants bottom their case exclusively on the statute and by-law. The court similarly limits its decision. It is also to be observed that the by-law contains, inter alia, a limitation not found in the statute. It provides that its idemnity provision shall not extend "to any compromise of any such liability". Defendants argue that the limitation applies only to a compromise after a director defendant has been finally adjudged to be liable. Defendants contend that they were not finally adjudged liable before the compromise was approved. It follows, they say, that the by-law limitation is inapplicable. In resolving this point I shall assume that we are dealing with a compromise rather than an adjudication even though a permanent injunction was issued as part of the approved settlement.

Defendants' suggested construction of the by-laws is so apparently out of reason that it must be critically examined to see whether it is a fair one. It is out of reason because it would, if adopted, permit indemnification when the charges against the directors, no matter how clear, are compromised before final judicial determination. It would thus have the unhealthy consequence of placing a director in the position where he would be assured of indemnification if he settled but would run the risk of paying his own attorney if he unsuccessfully resisted the action. This would be particularly undesirable because some compromises, as here, do not involve any personal contribution by the defendant directors.

I note another objection to defendants' suggested construction. Thus, the first prohibition on indemnification in the by-law covers a final adjudication of liability. It is difficult to believe that the drafters of the by-law intended to limit the compromise provision to the compromise of claims "finally adjudged" because in such cases the director's liability would generally be past the compromise stage.

I adopt the construction that the words "any such liability" in the by-law were intended to apply to any compromise of any action, suit or proceeding. This is a broad construction but it makes sense in the context and operation of the by-law. While a compromise does not necessarily connote "liability" it may do so and those adopting the corporate by-laws were free to resolve the doubt in such manner.

I conclude that Allied's by-law does not grant indemnification where a compromise is involved.

■ ■ The next problem involves the relationship between the by-law as construed and the indemnification statute.

I do not view the statute and by-law as being in conflict. I say this because I believe the by-law limits the scope of the power granted the corporation by the statute. A corporation is free to invoke less than all the indemnification power granted it under this particular statute, thus, the by-law governs here.

The controlling by-law, it is to be noted, denies indemnification when the director is found liable "because of failure in the performance of his duties as a director". Both the original and amended complaints charged the defendant directors with conduct which, if proved, certainly constituted failure in the performance of their duties. Indeed, the injunctive provision of the settlement related directly to the principal issue in the lawsuit. Thus, the compromise of such claims, under the language of the by-law, prevented indemnification.

Finally, it may be noted that the defendant directors themselves, by board action, purported to indemnify themselves in part even before the compromise of the action was approved by the court as required. It is difficult to understand the propriety of taking any such action before final disposition of such actions. Compare *Hollander v. Breeze Corp.*, 131 *N.J.Eq.* 585, 26 *A.2d* 507, aff'd., 131 *N.J.Eq.* 613, 26 *A.2d* 522. Moreover, it was not proper here for the additional reason that the governing by-law, as construed, prohibited it.

I therefore conclude that the defendant directors who were charged in the complaint with wrongdoing were not entitled to be

indemnified for the legal charges for their representation. I have assumed, without deciding, that these charges were made against them as directors and thus would have been indemnifiable except for the compromise. Compare *Mooney v. Willys-Overland Motors,* 204 *F.2d* 888, 39 *A.L.R.2d* 566.

To the extent the Lowenstein bills were for services rendered the individual defendants they are not proper charges to plaintiff corporation. As to those which the defendant directors caused to be paid by the corporation they are jointly and severally liable therefor to plaintiff. To the extent such bills are unpaid, it is determined that they are not proper obligations of plaintiff at least as between plaintiff and the individual defendants. Defendants do not suggest that the individual defendants are subject to different standards of liability.

Defendants contend that insofar as the Lowenstein services served and protected the so-called corporate interest, they were proper corporate charges under *Blish v. Thompson Automatic Arms,* 30 *Del.Ch.* 538, 64 *A.2d* 581.

I first consider whether some of the services rendered by the Lowenstein firm after the filing of *C.A.* 1082 come within the Blish principle.

A substantial portion of the transaction under attack in *C.A.* 1082 was the so-called "Dorsey Deal". Without going into its detail, I conclude that to the extent the legal services were rendered in defense thereof they were proper corporate charges within the Blish principle because, in contrast to the Automatic stock distribution feature of the deal, they were in furtherance of the general corporate purpose of putting the Company in a presumably profitable business line. That portion of the transaction had no peculiar connection with the individual defendants nor did it have any practical connection with the Automatic stock distribution portion of the transaction. Compare *National Bankers Life Insurance Co. v. Adler (Tex. Civ.App.),* 324 *S.W.2d* 35.

My conclusion as to the propriety of those charges raises another problem. Two of the Lowenstein bills cover services which are in part for the period prior to the commencement of *C. A.* 1082, but there

is no allocation to particular periods. I conclude, unless the parties desire a further hearing on this allocation, that I will allocate 50% of the pertinent portions of such bills to the period prior to the filing of *C.A.* 1082 and the balance to the litigation.

A two-fold difficulty exists in trying to allocate the legal charges between the corporation and the individual defendants for the services rendered after the filing of *C.A.* 1082. First, the same attorneys represented both the corporation and the individual defendants. I need not pass upon the desirability or propriety of this practice. The present practice in this court is for the corporation to have a different attorney. This might seem artificial, but, in theory, the "interests" involved may be quite different and the corporate attorney should so understand his obligation. Second, the billings and the testimony do not purport to allocate the charges between the corporation and the individual defendants. Of necessity then, any allocation will be largely arbitrary. Based on the present record I determine that $\frac{1}{3}$ of such charges are allocable to proper corporate purposes while the remaining $\frac{2}{3}$ are attributable to the personal defense of the individual defendants. In arriving at these percentages I have tried to "weigh" the fact that these fees might not have been necessary had the transaction not involved the Automatic stock distribution feature.

Thus, the individual defendants will not be liable for corporate payments made up to $\frac{1}{3}$ of the total billings to the extent they involved the defense of *C.A.* 1082. The individual defendants will be liable to plaintiff for the balance if payment was made by Allied. To the extent such charges have not been paid, the plaintiff corporation is not ultimately liable and must be saved harmless by the individual defendants by appropriate provisions. My conclusion is so limited because, Lowenstein not being a party, I cannot decide whether it can recover from plaintiff.

The court realizes that the record leaves much to be desired in making the allocation of services and will therefore hear further testimony thereon if the parties promptly apply therefor. If they do not so apply the court will infer that they deem the court's allocations reasonable.

Plaintiff's claim that some of the fee charges were excessive has been rendered moot except as to the part covered by the Blish rule. That issue, if it is one, cannot be resolved on this record. If plaintiff desires to press the matter further, it may have a hearing thereon.

Plaintiff puts three other charges specifically in issue by an amendment filed after trial and this court's first decision. Defendant says it is too late to raise such issues because they did not fairly appear in the pleadings at the time of the trial and were not tried by tacit consent of the parties.

The first item is the bill of defendants' Delaware counsel for representing the corporation and the individual defendants in *C.A.* 1082.

It is difficult to see how defendants could be said to be prejudiced by this amendment of *C.A.* 1082. It does not raise a factual issue because the legal services fall into the same categories as those involved in the Lowenstein claim. They were paid by the corporation. On the present record I shall allocate it in the same manner as the Lowenstein bill for the litigation period. However, if defendants have any evidence thereon I shall hear it and review my conclusion in the light thereof. In any event, this issue raised by the amendment permitted to be filed after trial will be resolved.

Plaintiff also seeks to hold defendants liable for the counsel fees awarded plaintiff's counsel in connection with the settlement of *C.A.* 1082. I shall assume the claim was properly pleaded. These fees have heretofore been determined to be Essential's obligation. Notice of the application for fees was a part of the notice of the hearing on the settlement of *C.A.* 1082. It was made clear in the notice to stockholders that the fees, if granted, would be paid by Allied. It seems to the court that to make the individual defendants now liable for the fees awarded plaintiff would be to alter the terms of the settlement by imposing a liability not fairly contemplated by the settlement. I therefore conclude that the defendants are not liable for the fees allowed plaintiff's attorneys in connection with the settlement of *C.A.* 1082.

Plaintiff seeks reimbursement from the defendant directors for sums paid by Allied for legal services rendered such defendants in connection with *Civil Action* 1139 in this court. *Essential Enterprises Corp. v. Automatic Steel Products,* 164 *A.2d* 437. Admittedly, this issue is properly before the court. Defendants contend that such sums were properly payable under the indemnification statute and by-laws. *Civil Action* 1139 was an action seeking a determination that certain individuals were the validly elected directors and officers of Essential. A final order was entered granting the requested relief. The defendants here seeking indemnification either defaulted or consented thereto. Their prior actions required the filing of the suit. They were not entitled to indemnification and are liable to plaintiff for the sums paid. I so conclude because they were in effect finally adjudged to have failed to perform their duty as directors. In view of my conclusion it is not necessary to pass upon the reasonableness of such charges.

I next consider charges for legal services rendered Allied of Virgin Islands, a wholly owned subsidiary of Allied. There are two bills involved. The one of June 24, 1959, is unpaid. I conclude that it is not proper for the court to pass on this bill because Allied of Virgin Islands is not a party hereto and the obligation, if any, is its responsibility. I find that all of the February 18, 1949 bill (paid) was for the personal purposes of the defendant, Johnston. It was not covered by the settlement of *C.A.* 1082 since it was for services to another corporation, albeit, its subsidiary. Since it was an improper payment by Allied it follows that the individual defendants who authorized such payment are liable therefor.

I now consider the Alexander Grant bill dated July 31, 1959 (unpaid). Liability for this bill is not determinable in this action because the creditor is not a party to the action and because Essential concedes that it has not made any claim as to it. Furthermore, the bill covers services rendered after *C.A.* 1082 was settled.

The defendants next contend that they are entitled to indemnification by Essential for their litigation expenses in this action to the extent they have been found not liable for the various stated claims for relief.

I do not reach the question as to whether the statute permits an allocation of expenses when directors have been adjudged liable as to some but not all of the claims asserted against them. I say this because I think the controlling by-law does not permit such an allocation. It denies indemnification where, as here, the directors have been finally adjudged liable in this action for failure in the performance of their duties as directors. While the finding does not apply to all claims, the by-law does not require it. Thus, the defendants are not entitled to indemnification here.

I believe both the statute and corporate by-law need clarification in the area of partial liability because the problem is one which manifestly should not be treated in all cases on an either/or basis. However, careful consideration must be given before a change is made. I might also note that a study of our indemnification statute is in order to consider whether it should deal with compromise situations. I understand that several states have dealt with this problem by legislation.

Finally, to the extent it has been determined that any unpaid bills are the obligation of Essential, a judgment will be entered against Essential therefor, but only if the claimant is a party hereto who has asserted such claim. Otherwise, the determination will be limited to a declaration of rights as between the parties herein.

Present order on notice.