INTERNATIONAL BROTHERHOOD OF
TEAMSTERS, CHAUFFEURS, WARE-
HOUSEMEN AND HELPERS OF
AMERICA, etc., Plaintiff,

v.

James R. HOFFA et al., Defendants.

Civ. A. No. 1154–64.

United States District Court
District of Columbia.

May 14, 1965.

Edward B. Bergman and Solo, Bergman & Trommer, Philadelphia, Pa., and Seymour J. Spelman, Washington, D. C., for John C. Jones, Sr., Jesse Colpo, L. U. Shafer, Benjamin Burnham, Louis J. Bottone and John Regan, trustees ad litem.

F. Joseph Donohue and Donohue, Kaufmann & Shaw, Washington, D. C., for defendant James R. Hoffa.

Herbert S. Thatcher, Washington, D. C., for defendant John F. English and applicant for intervention International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

James E. Hogan and Hugh J. Beins, Washington, D. C., for defendant Thomas E. Flynn, and Thomas E. Flynn, pro se.

Myron G. Ehrlich, Washington, D. C., for defendant Harold J. Gibbons.

Thomas S. Jackson and Jackson, Gray & Laskey, Washington, D. C., for defendant Resolute Ins. Co.

Kahl K. Spriggs and John F. Myers, Washington, D. C., for defendant Citizens Cas. Co. of New York.

J. Roy Thompson, Jr., of Washington D. C., for defendant Niagara Fire Ins. Co.

ROBINSON, District Judge.

The pending motions in this case present for resolution issues as to the eligibility of members of a labor organization to maintain a derivative action against its representatives for alleged breaches of fiduciary obligation, and the proper role of the organization and its counsel in the litigation.

This action is brought in the name and for the benefit of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, an unincorporated labor organization,[1] by six individuals, as its trustees ad litem, who claim membership in it through membership in good standing in one of its affiliated local unions. The individual defendants are alleged to be the officers of the International who collectively compose its General Executive Board, and its International Trustees charged with the duty of auditing its financial records and approving proper and duly authorized expenditures of its funds. The corporate defendants are alleged to be fidelity bond insurance companies which have indemnified the International against specified breaches of fiduciary duty by the individual defendants.[2]

The complaint [3] charges that the officer defendants, as members of the General Executive Board, have authorized disbursements from its funds in violation of fiduciary obligations imposed upon them by the Labor-Management Reporting and Disclosure Act of 1959 [4] and the common law of the District of Columbia.[5] It is asserted specifically that these defendants authorized expenditures for the cost of defense of the International's General President in three criminal proceedings brought against him. It is alleged on be-

---

1. The membership of the International is alleged to number approximately 1,700,000 persons throughout the United States and Canada.

2. It is alleged that all individual defendants, with the exception of one International Trustee who appears to have become such in January, 1964, were elected to their respective offices at a convention of the International held in 1961. One of the International Trustees seems not to have been in office since November, 1963.

3. References herein to the complaint, unless otherwise stated, are to the amended complaint filed by the trustees ad litem.

4. Pub.L. 86–257, 73 Stat. 519 (1959).

5. See Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962).

lief that other funds have been spent for the defense of the General President in other proceedings, and for the defense of other officials of the International and of affiliated local unions as well.[6]

The complaint seeks injunctive relief against further expenditures of this character, an accounting by the individual defendants for the funds so. spent, and a judgment in the International's favor against the individual defendants and their sureties for the amount determined to be owed.

## I

The complaint charges that prior to the commencement of this suit, fourteen members in good standing of a local affiliate, four of whom are trustees ad litem herein, made demand upon, and met refusal by, the International's General Executive Board to take necessary action to prevent funds from being spent for these purposes and to recover funds allegedly already so spent. On its face it appears that the two remaining trustees ad litem did not participate in this effort, and it is nowhere claimed that they made any other pre-litigation demand that the International itself seek remediation or that they were in any

wise justified in failing to do so. The International, accordingly, has moved that they be dropped from the case.

The Act imposes upon "officers, agents, shop stewards, and other representatives of a labor organization"[7] fiduciary obligations inuring to the benefit of both the organization and its collective membership. It is "in relation to such organization and its members as a group" that their "positions of trust" are held and the concommitant obligations delineated by the Act are owed.[8] And, more specifically, it is these representatives who are commanded to hold the organization's "money and property solely for the benefit of the organization and its members."[9]

For a violation of duty, the Act provides, a member may sue, but his standing to do so is conditioned upon satisfaction of stated requirements. "[T]he labor organization or its governing board or officers," after breach of obligation is asserted, must "refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization"[10] and, even then, it

---

**6.** The General President and General Secretary-Treasurer are alleged to have authorized and actually expended the funds, the General President to have received the benefit of the expenditures, the General Executive Board to have authorized the expenditures, and the four International Trustees to have approved the expenditures as proper.

**7.** "The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with

his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy." Labor-Management Reporting and Disclosure Act of 1959, § 501 (a), 29 U.S.C. § 501(a).

**8.** Ibid.

**9.** Ibid.

**10.** "When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail

is "such member" who "may sue." [11] This can hardly be taken as a suggestion that a member who did not make such request is nevertheless authorized to bring the action.

■■ Despite the danger that in particular applications literalness may tend to stifle true legislative intent,[12] it is clear that here the statutory language must be given its natural meaning. The Act was not "intended by Congress to constitute an invitation to the courts to intervene at will in the internal affairs of unions";[13] rather, there was an underlying "general congressional policy to allow unions great latitude in resolving their own internal controversies." [14] That policy is best subserved by close adherence to the words Congress chose to use in prescribing the conditions under which judicial resolution of such a controversy might occur.[15] Particularly is this so where, as here, a statute which confers a new right as a matter of federal law also utilizes restrictive language in specifying the remedy for its infringement.[16] It seems consistent with the general frame as well as the language of the section under investigation [17] to construe it, as other courts have done, to

10. to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation." Labor-Management Reporting and Disclosure Act of 1959, § 501(b), 29 U.S.C. § 501(b).

11. Ibid.

12. See Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211, 215 (1962); Smither & Co. v. Coles, 100 U.S.App.D.C. 68, 70, 242 F.2d 220, 222 (1957), cert. denied 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429 (1957); United States v. Brennan, 94 U.S.App. D.C. 184, 186, 214 F.2d 268, 270 (1954), cert. denied 348 U.S. 830, 75 S.Ct. 53, 99 L.Ed. 655 (1954).

13. Gurton v. Arons, 339 F.2d 371, 375 (2d Cir. 1964).

14. Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190, 194 (1964).

15. "True, courts in the interpretation of a statute have some scope for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results, United States v. Katz, 271 U.S. 354, 362 [46 S.Ct. 513, 70 L. Ed. 986], or would thwart the obvious purpose of the statute, Haggar Co. v. Helvering, 308 U.S. 389 [60 S.Ct. 337, 84 L.Ed. 340]. But courts are not free to reject that meaning where no such consequences follow and where, as here, it appears to be consonant with the purposes of the Act as declared by Congress and plainly disclosed by its structure." Helvering v. Hammel, 311 U.S. 504, 510–511, 61 S.Ct. 368, 371, 85 L.Ed. 303, 307, 131 A.L.R. 1481, 1485 (1941).

16. See Calhoon v. Harvey, supra note 14; Penuelas v. Moreno, 198 F.Supp. 441 (S.D.Cal.1961); Coleman v. Brotherhood of Railway & Steamship Clerks, etc., 228 F.Supp. 276 (S.D.N.Y.1964), aff'd 340 F.2d 206 (2 Cir. 1965); Uarte v. United States, 7 F.R.D. 705 (S.D. Cal.1948).

17. The language of § 501 is identical with the Landrum-Griffin bill, H.R.8400, H.R.8401, 86th Cong., 1st Sess. (1959), and the fiduciary provision of the Elliott bill, H.R.8342, 86th Cong., 1st Sess. (1959). While it was the Elliott bill that the House Committee on Education and Labor reported out, the House accepted and passed the Landrum-Griffin bill as a substitute. 105 Cong.Rec. 14532–14541 (Daily Ed. Aug. 14, 1959). The Conference Committee substituted the Landrum-Griffin bill for the Kennedy-Ervin bill, S.1555, 86th Cong., 1st Sess. (1959), which the Senate had passed. H.R.Rep.No.1147, 86th Cong., 1st Sess. 31 (1959), U.S.Code Cong. and Adm. News 1959, p. 2503.

mean that when no member makes the stipulated request the statutory action cannot be brought at all,[18] and when such a request is made only the members making it can later sue.[19] Here two of the trustees ad litem did not join in the prior demand [20] upon the General Executive Board, and their failure to do so disables them from maintaining this suit to the extent that it is founded upon the provisions of the Act.

■■ Nor is standing to sue derived from the consideration that the action seeks also to enforce a common law remedy [21]—one, it seems, not superseded by the Act.[22] In an appropriate derivative

The House Committee on Education and Labor stated that § 501(b) of the Elliott bill—which was identical with § 501(b) of the Act—"[p]rovides that when the fiduciary duties declared in subsection (a) are alleged to have been violated and the union or its officers upon request of any member refuse or fail within a reasonable time to sue to recover damages or for an accounting or other appropriate relief, *the requesting member* may sue on behalf of the union for appropriate relief in any Federal district court or State court of competent jurisdiction." H.R.Rep.No.741, 86th Cong., 1st Sess. 44 (1959) U.S.Code Cong. and Adm.News 1959, p. 2467. (emphasis supplied).

**18.** "We hold that this provision of the statute is mandatory and that its requirements cannot be met by anything short of an actual request. An allegation of the futility of such a request will not suffice. Together with the further requirement of a showing of good cause and of securing court permission to proceed, the provision requiring a request is clearly designed to protect union officials from unjust harassment. If it is to serve the purpose for which it was included, it must be given full effect. Since the plaintiffs do not allege that they have made the prescribed request, they are not in a position to bring the present action." Coleman v. Brotherhood of Railway & Steamship Clerks, etc., 340 F.2d 206, 208–209 (2d Cir. 1965). To the same effect is Penuelas v. Moreno, supra note 16.

**19.** Persico v. Daley, 239 F.Supp. 629 (S.D.N.Y. Jan. 30, 1965).

**20.** While § 501(b) in terms requires a request "to sue *or* recover damages or secure an accounting or other appropriate relief," it has been questioned whether the italicized "or" was not actually intended to read "to" with the result that there must be a specific request for suit. Persico v. Daley, supra note 19. See also note 17, supra, and Penuelas v. Moreno, supra note 16, 198 F. Supp. at 443–444. In the request alleged

here the General Executive Board was in part advised: "The use of the funds of the International for the purpose of paying the legal expenses of International officials accused of criminal offenses is a violation of the Labor Management Reporting and Disclosure Act of 1959. We therefore demand that expenditures of International funds for this purpose cease immediately, and that you, as members of the International Executive Board, take immediate steps to recover all of the funds which have been spent to this date. * * * You are also notified that this letter is a request for action by you, under the provisions of Section 501(b) of the Labor Management Reporting and Disclosure Act of 1959, and you are notified that if you do not take the action requested herein within a reasonable time, we shall institute suit to enjoin further payments and to recover payments already made, on behalf of the International." This seems sufficient as a request to sue and in any event no party has raised a point in this connection.

**21.** See Milone v. English, supra note 5.

**22.** "Except as explicitly provided to the contrary, nothing in this chapter shall reduce or limit the responsibilities of any labor organization or any officer, agent, shop steward, or other representative of a labor organization, or of any trust in which a labor organization is interested, under any other Federal law or under the laws of any State, and, except as explicitly provided to the contrary, nothing in this chapter shall take away any right or bar any remedy to which members of a labor organization are entitled under such other Federal law or law of any State." Labor-Management Reporting and Disclosure Act of 1959, § 603(a), 29 U.S.C. § 523(a). See Bell v. Waterfront Commission of New York Harbor, 183 F.Supp. 175 (S.D. N.Y.1960), aff'd 279 F.2d 853 (2d Cir. 1960); Gilbert v. Hoisting & Portable Engineers Local Union 701, 237 Or. 130, 384 P.2d 136 (1963), cert. denied 376 U.S. 963, 84 S.Ct. 1125, 11 L.Ed.2d 981 (1964).

proceeding, of which the stockholders' derivative suit is the most conspicuous example,[23] one secondarily interested in the subject matter is enabled to sue to vindicate a right when the party primarily interested refuses to do so. The litigation, a creature of equity, is permitted because the suitor has no remedy at law to redress the refusal of him who holds the primary right to sue,[24] but a previous demand for action, unless adequately excused, is a condition precedent to its maintenance.[25] Here, notwithstanding the ease with which satisfaction of such conditions may now be pleaded,[26] the complaint not only fails to show that the two questioned trustees ad litem met the requirement of a demand, but discloses affirmatively that they did not participate in the only demand that is alleged. By the most liberal standards these two have failed to demonstrate enough to presently enable them to remain in this action.[27]

The International's motion to drop these parties is procedurally proper[28] and its position thereon factually and legally sound. The motion will be granted.

II

The International has moved for an order dropping it as the plaintiff and permitting its intervention as a defendant. It tenders an answer which, among other defenses presented, would assert the claim that any expenditures involved in this case were made pursuant to an amendment of its constitution adopted at its 1961 convention and were authorized

23. The parties have relied heavily upon decisions in such suits as precedents 'and the analogy is compelling. See Milone v. English, supra note 5, 113 U.S.App. D.C. at 210, 211, 306 F.2d at 817, 818, where Witherspoon v. Hornbein, 70 Colo. 1, 196 P. 865 (1921) and Marco v. Dulles, 169 F.Supp. 622 (S.D.N.Y.1959) are cited, and Murphy v. Washington American League Base Ball Club, 116 U.S.App. D.C. 362, 366, 324 F.2d 394, 398 (1963) where, conversely, Milone v. English is quoted and the principle it established is applied. See also Koster v. (American) Lumbermens Mutual Casualty Co., 330 U.S. 518, 522, 67 S.Ct. 828, 830–831, 91 L.Ed. 1067, 1072–1073 (1947).

24. Koster v. (American) Lumbermens Mutual Casualty Co., supra note 23, 330 U.S. at 522, 67 S.Ct. at 830–831, 91 L.Ed at 1072–1073; Meyer v. Fleming, 327 U.S. 161, 167, 66 S.Ct. 382, 386, 90 L.Ed. 595, 599–600 (1946).

25. Hawes v. Oakland, 104 U.S. 450, 460–461, 26 L.Ed. 827, 832 (1881); Green v. Hedenberg, 159 Ill. 489, 42 N.E. 851, 853 (1896); Kowalski v. Nebraska-Iowa Packing Co., 160 Neb. 609, 71 N.W.2d 147, 150–151 (1955); Mount v. Radford Trust Co., 93 Va. 427, 25 S.E. 244, 245 (1896). See F.R.Civ.P. 23(b). Compare Fish v. Huddell, 60 App.D.C. 263, 264, 51 F.2d 319, 320 (1931); Durkin v. Murray, 90 F.Supp. 367, 368 (D.D.C. 1950).

26. F.R.Civ.P. 9(c).

27. See East River Construction Corp. v. District of Columbia, 183 F.Supp. 684 (D.D.C.1960); Holley Coal Co. v. Globe Indemnity Co., 186 F.2d 291 (4th Cir. 1950); Landau v. Wolverine Hotel Co., 33 F.Supp. 705 (N.D.Ill.1940). Thus, the question whether their standing to litigate the common law but not the statutory theory of action would entitle them to stay in the case does not arise.

28. F.R.Civ.P. 21. It is also unembarrassed by the considerations attendant upon its effort to intervene, which are discussed in Parts II and III hereof. The objections of the trustees ad litem to its intervention as an active defendant do not run to its standing to seek elimination of improper parties on the plaintiff side of the litigation. In stockholders' derivative actions the corporation has frequently made the point that the plaintiff made no demand for suit on the board of directors. Quirke v. St. Louis-San Francisco Railway Co., 277 F.2d 705 (8th Cir. 1960); Gottesman v. General Motors Corp., 171 F.Supp. 661 (S.D.N.Y.1959); Herrick v. Dempster, 73 N.J.Eq. 145, 75 A. 810 (1907); Flynn v. Brooklyn City Railroad Corp., 158 N.Y. 493, 53 N.E. 520 (1899); Cf. Hausman v. Buckley, 299 F.2d 696, 93 A.L.R.2d 1340 (2d Cir. 1962). The International's appearance by its own counsel, who also represents an officer defendant, could give "rise to no conflict between a reasonable position on behalf of the International and the position adopted by its officers." Milone v. English, supra note 5, 113 U.S.App. D.C. at 211, 306 F.2d at 818.

by its General Executive Board consistently therewith.[29]

It is evident that the International is an indispensible party.[30] It, not the trustees ad litem, would reap the benefit of any forthcoming recovery, and its presence is equally necessary to protect the defendants, in that event, from subsequent suit.[31] The present parties do not dispute this proposition; the contest, rather, is as to the side of the litigation upon which it should be placed.

Any effort to automatically align the organization as a party is destined to meet certain abortion. While the Act specifies that the object of the suit must be "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization,"[32] it does not expressly require that the organization itself be a party, either plaintiff or defendant. That it does not become the plaintiff simply in consequence of the suit becomes even plainer when reference is made to the provision respecting counsel fees and reimbursement of litigation expenses. It is "counsel prosecuting the suit at the instance of the member of the labor organization" to whom fees may be awarded, and "such member" to whom reimbursement "for any expenses necessarily paid or incurred by him in connection with the litigation" may be made, from any recovery effected in the action.[33] More importantly, it is evident that while the suit is "for the benefit of the labor organization,"[34] the statutory remedy is a true derivative proceeding—the suit of the member who "may sue."[35] The trustees ad litem are actually the plaintiffs in the action, and it goes without saying that the International need not remain on their side of the case merely because by the complaint they undertook to place it there.

Nor is it helpful to endeavor rule-of-thumb alignment as a matter of common law technique. In stockholders' derivative suits the corporation is sometimes treated as a plaintiff,[36] but perhaps more frequently as a nominal or active defendant.[37] Sometimes it has assisted the

29. "The International Union is authorized to pay all the expenses for investigating services, employment of all counsel and other necessary expenditures in any cause, matter, case or cases where an officer, representative, employee, agent, or one charged with acting in behalf of the International Union and/or its affiliates is charged with any violation or violations of any law or is sued in any civil action or actions (1) if a majority of the General Executive Board in its sole discretion determines that said charges or law suits are (a) unfounded, or (b) are politically motivated, or (c) were filed in bad faith in an attempt to embarrass or destroy the Union or the Union officer or representative, (2) of if a majority of the General Executive Board in its sole discretion determines that the expenditures should be made." International Constitution, Art. IX, § 9(a).

30. Meyer v. Fleming, supra note 24, King v. Wall & Beaver Street Corp., 79 U.S. App.D.C. 234, 145 F.2d 377 (1944); Fanchon & Marco v. Paramount Pictures, 202 F.2d 731, 36 A.L.R.2d 1336 (2d Cir. 1953); Schmidt v. Esquire, Inc., 210 F.2d 908 (7th Cir. 1954), cert. denied Schmidt v. Crowell-Collier Pub. Co., 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646 (1954).

31. Labor-Management Reporting and Disclosure Act of 1959, § 501(b), 29 U.S.C. § 501(b); Greenberg v. Giannini, 140 F.2d 550, 152 A.L.R. 966 (2d Cir. 1944); Eldred v. American Palace-Car Co., 105 F. 457 (3d Cir. 1900); Fuller v. American Machine & Foundry Co., 91 F.Supp. 710, 711 (S.D.N.Y.1950); In re E. C. Warner Co., 232 Minn. 207, 45 N.W.2d 388 (1950); Willoughby v. Chicago Junction Railways, 50 N.J.Eq. 656, 25 A. 277 (1892).

32. Labor-Management Reporting and Disclosure Act of 1959, § 501(b), 29 U.S.C. § 501(b).

33. Ibid.

34. Ibid.

35. Ibid.

36. See Meyers v. Smith, 190 Minn. 157, 251 N.W. 20 (1933); Chaplin v. Selznick, 186 Misc. 66, 58 N.Y.S.2d 453 (1945).

37. See the cases cited in notes 39–44. See also Lyon v. Holton, 286 N.Y. 270, 36 N.E.2d 201 (1941).

plaintiff,[38] but at other times the defendant.[39] No single criterion appears capable alone of concretizing its true role.

The trustees ad litem base their opposition to the International's motion upon the claim that to grant it would unbalance the contest. Reliance is placed on holdings in stockholders' derivative suits that the corporation must remain impartial to management defendants charged with personal wrongdoing in their relation to it.[40] Certainly both reason and policy lend support to the application of this principle where the corporation has no discernible interest in the action save to assist the parties impugned.[41] But it is equally clear that if the corporation's own interests are drawn into the controversy, it may aggressively defend them. Such is the situation where the suit seeks the appointment of a corporate receiver,[42] or to set aside a corporate reorganization,[43] or to enjoin the performance of corporate contracts,[44] or attacks a settlement of corporate litigation.[45] No determination is safe without ascertaining the legitimate involvement, and accordingly the proper role, the beneficiary of the litigation should be permitted.[46]

The case has not yet reached the stage at which the International's defense can be heard on the merits. The present question, consequently, is not whether it should prevail on its claim but whether it may independently advocate its position. It would appear that, as a general proposition, a labor organization should be kept in a neutral role when it can demonstrate no interest in the litigation beyond a shielding of officials whose activities are under attack; it is clear, too, that even when permitted an adversary role, it should be limited to defenses designed to safeguard the institutional issues at stake.[47] Certainly those who

38. See Bachrach v. General Investment Corp., 29 F.Supp. 966 (S.D.N.Y.1939); Loeb v. Berman, 217 Cal. 716, 20 P.2d 685 (1933); O'Brien v. King, 258 App. Div. 504, 17 N.Y.S.2d 44 (1st Dep't 1940).

39. See Winkelman v. General Motors Corp., 48 F.Supp. 490 (S.D.N.Y.1942); Otis & Co. v. Pennsylvania Railroad Co., 57 F.Supp. 680 (E.D.Pa.1944); Katz v. New England Fuel Oil Co., 135 Me. 452, 199 A. 274 (1938); Pollitz v. Wabash Railroad Co., 207 N.Y. 113, 100 N.E. 721 (1912).

40. Leven v. Birrell, 92 F.Supp. 436 (S.D. N.Y.1949); Meyers v. Smith, 190 Minn. 157, 251 N.W. 20 (1933); Solimine v. Hollander, 129 N.J.Eq. 264, 19 A.2d 344 (1941); Apfel v. Auditore, 223 App. Div. 457, 228 N.Y.S. 489 (1st Dep't 1928), aff'd mem. 250 N.Y. 600, 166 N.E. 339 (1929).

41. "There is a vast difference between letting a director fight the battle at his own expense—with reimbursement if he is vindicated—and using the power of the corporation to aid in the fight before it is shown whether or not he is a faithful servant who deserves indemnity. * * * The rule under discussion is designed to produce fair play—to prevent the plaintiff from being overwhelmed by the company's financial power before the real defendants have shown their guilt or innocence." Washington, Litigation Expenses of Corporate Directors in Stockholders' Suits, 40 Col.L.Rev. 431, 438–439 (1940).

42. Esposito v. Riverside Sand & Gravel Co., 287 Mass. 185, 191 N.E. 363 (1934); Bachelder v. Brentwood Lanes, Inc., 369 Mich. 155, 119 N.W.2d 630 (1963); Godley v. Crandall & Godley Co., 181 App. Div. 75, 168 N.Y.S. 251 (1st Dep't 1917), aff'd mem. 227 N.Y. 656, 126 N.E. 908 (1920); McHarg v. Commonwealth Finance Corp., 44 S.D. 144, 182 N.W. 705 (1921). See also Murphy v. Washington American League Base Ball Club, supra note 23.

43. See Corey v. Independent Ice Co., 226 Mass. 391, 115 N.E. 488 (1917).

44. Kirby v. Schenck, 25 N.Y.S.2d 431 (Sup.Ct.1941).

45. Alleghany Corp. v. Kirby, 218 F.Supp. 164 (S.D.N.Y.1963).

46. The fundamental question is whether "the interests of the corporation, considered apart from the respective interests of the individual defendants therein, were so injuriously threatened or involved as to justify it in retaining and paying counsel to protect its interests." Kirby v. Schenck, supra note 44, 25 N.Y. S.2d at 433.

47. Holdeman v. Sheldon, 204 F.Supp. 890, 892–893 (S.D.N.Y.1962), aff'd 311 F.2d 2 (2d Cir. 1962); Washington & Bishop,

for good cause bring and in good faith bear the brunt of the fight should be protected against harassment and oppression through the assertion of what are merely the defenses of the individual parties. At the same time, the vital concerns of the organization in the litigation must be recognized and given their just due.

The International, as a labor organization, has an interest in formulating its own policies, making its own decisions, and conducting its own affairs, which can be disregarded only when in a particular instance it exceeds legal limits.[48] By its constitution its convention is its "supreme governing authority" with "plenary power to regulate and direct" its "policies, affairs, and organization."[49] Indisputably, at this point at least, the constitutional amendment, which the International would defend was unanimously adopted in 1961 at a convention of delegates elected by its membership, and already the claims asserted against the individual defendants in this case challenge the legal efficacy of that amendment.

The International's interest is broader than the determination of that issue in the litigation as it now stands.[50] On one side are the trustees ad litem—the real plaintiffs—who are but a tiny fraction of the organization's membership;[51] on the other side are but a few of its executives and their sureties who are now before the Court.[52] It cannot be said with any real degree of assurance that either side can adequately represent the interest of the nearly two million rank and file members in the convention activity, or is equipped to voice their position on the issue. That the present individual defendants have already pointed to the amendment in their answers is not enough to preclude the International. It is in position to undertake demonstration of whatever considerations it may be felt would protect the amendment from successful assault, and should be allowed to do so.[53]

■ To admit the International as a party to defend independently the constitutional amendment is not to permit it to shield the individual defendants in any wrongdoing of which they are accused. What in essence the International would be at liberty to defend is simply the action of its members through their delegates assembled in convention. It has

Indemnifying The Corporate Executive 37–74 passim (1963). See also the authorities cited supra notes 40 and 41.

48. Even the fiduciary obligations the trustees ad litem invoke may themselves be affected by "the special problems and functions of a labor organization." Labor-Management Reporting and Disclosure Act of 1959, § 501(a), 29 U.S.C. § 501(a).

49. "The International Convention shall be the supreme governing authority of the International Union and shall have the plenary power to regulate and direct the policies, affairs, and organization of the International Union." International Constitution, art. III, § 1.

50. See Albrecht, Maguire & Co. v. General Plastics, Inc., 256 App.Div. 134, 9 N.Y.S. 2d 415, 420 (4th Dep't 1939), aff'd mem., 280 N.Y. 840, 21 N.E.2d 887 (1939); Kanneberg v. Evangelical Creed Congregation, 146 Wis. 610, 131 N.W. 353, 355, 39 L.R.A.,N.S.. 138 (1911).

51. See supra note 1.

52. Of the fifteen officers and four International Trustees who are sued, only four have appeared in the action. It may be noted that the individual defendants may endeavor to press good faith as an additional defense to the neglect of others.

53. See Moschetta v. Cross, 43 CCH Lab. Cas. ¶ 17,057 (D.D.C. July 6, 1961); Alvino v. Bakery & Confectionery Workers, 43 CCH Lab.Cas. ¶ 17,058 (D.D.C. July 6, 1961); Highway Truck Drivers & Helpers Local 107 v. Cohen, 182 F. Supp. 608 (E.D.Pa.1960), aff'd 284 F. 2d 162 (3d Cir. 1960), cert. denied 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744 (1961), 215 F.Supp. 938 (E.D.Pa.1963), aff'd 334 F.2d 378 (3d Cir. 1964), cert. denied 379 U.S. 921, 85 S.Ct. 277, 13 L.Ed.2d 335 (1964), in all of which the union was an active party defendant. In Cohen, it was admitted as such after the suit was brought in its name by trustees ad litem, as here. See also Milone v. English, supra note 5.

a legitimate interest, in an institutional sense, not only in having a judicial determination as to the validity of this action but also in the opportunity to be heard before the issue is resolved. This opportunity will be afforded whenever the International is prepared to utilize it in a proper manner.

### III

The attorney who signed the International's proposed answer in intervention and who would serve as its counsel,[54] however, has already entered his appearance and filed an answer for the International's General Secretary-Treasurer, a member of its General Executive Board and an individual defendant herein. His answer, like the International's admits, but claims justification for, past expenditure of International funds in the defense of certain International officers accused of criminal offenses. It further admits that as a member of the General Executive Board he authorized such expenditures. The trustees ad litem have moved for an order disqualifying his attorney from acting as counsel for the International, and striking its answer in intervention tendered by him, on the ground that such representation would involve a disabling conflict of interests.

As a matter of general common law in this jurisdiction, the "funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership," [55] and the same broad principle flows from the Act.[56] Simultaneous representation of the organization and an individual defendant charged with unauthorized disbursement of its funds would not only

to that extent provide assistance of a forbidden type but would produce other detrimental consequences as well.[57] In Milone v. English,[58] where, unlike here, International officials were charged with fraud, and it was sought to require defendant officers to repay to the International the amount of its expenditures in defense of the suit, which included defense also of the officers, and to enjoin representation of the International and officer defendants by the same counsel, it was stated:

> "The treasury of a union is not at the disposal of its officers to bear the costs of their defense against charges of fraudulently depriving the members of their rights as members. It is clear the complaint in this case charged individual officer defendants with conduct which was seriously detrimental to the interests of the International and to the rights of its members. And in deciding whether or not union funds may be used to defend such a suit the final outcome of the charges is not determinative; for if the charges have substance a sound resolution may be prevented by the very fact of dual representation during the process leading to a decision with respect to the charges. Different counsel would be required in this process. In other words, counsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties. In such a situation it would be incumbent upon counsel

---

54. Since 1939 he has been on regular retainer as special counsel for the International, which authorized him to represent both the General Secretary-Treasurer and it, for which representation he would receive no compensation beyond his retainer.

55. Milone v. English, supra note 5, 113 U.S.App.D.C. at 210, 306 F.2d at 817.

56. See Moschetta v. Cross; Alvino v. Bakery & Confectionery Workers; and Highway Truck Drivers & Helpers Local 107 v. Cohen, all supra note 53; Holdeman v. Sheldon, supra note 47.

57. See Holdeman v. Sheldon, supra note 47, 204 F.Supp. at 892–895.

58. Supra note 5.

not to represent both the union and the officers." [59]

■ This Court has similarly forbidden the representation by organization counsel of defendant officers charged with delinquencies in their capacity as such.[60] Again analogizing the stockholders' derivative action, Murphy v. Washington American League Base Ball Club [61] established for this circuit the proposition that the corporation and an individual defendant cannot be represented by the same counsel, a conclusion reached elsewhere as well.[62] Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer.

The fact, pointed to by the International, that in Milone the charges were of fraudulent diversion whereas here they are not, does not remove this case from the mainstream of judicial opinion. As was stated in Murphy,

"True, the complaint in the instant case charges 'misconduct' and 'improper and wrongful acts,' rather than fraud or criminality. But we think the principle of the Milone decision may be found to apply here, requiring that the corporation and the individual defendants be separately represented." [63]

And, as Milone admonishes, "if the charges have substance a sound resolution may be prevented by the very fact of dual representation during the process leading to a decision with respect to the charges." [64]

■ Nor is the International's contention that the similarity of the defenses offered by the organization and the individual defendants eliminates possible conflict of interest persuasive to any greater degree. Potential, no less than actual, conflict disqualifies counsel from serving in a double capacity, and the potentiality of conflict is clearly present here. Counsel representing an individual defendant must not only bend every effort to demonstrate that he did not violate

---

59. 113 U.S.App.D.C. at 210, 306 F.2d at 817.

60. Moschetta v. Cross and Alvino v. Bakery & Confectionery Workers, both supra note 53.

61. Supra note 23. This was an action brought by a minority stockholder primarily for the purpose of invalidating increases voted by the board of directors in the salaries paid to members of the board and others for services performed as officers and employees. The corporation was made a defendant, and it and only one director were served with process. The corporation and that director were represented by the same counsel who on their behalf filed a joint answer defending the impugned board action on the merits and on their joint behalf defeated on the merits a motion for a preliminary injunction against the salary increases. The plaintiff apparently did not object to that representation; rather, he sought, but was denied, an injunction against representation of other unserved defendants by counsel for the corporation. This denial was affirmed since the other defendants "have not been served in this litigation, and strictly speaking have not been represented in

it." (116 U.S.App.D.C. at 365, 324 F.2d at 397). Stating that "[a] serious question has thus been raised, however, upon which we think we should comment," the Court pointed to what was said in Milone v. English "in words which seem as applicable to stockholders' derivative suits as to union litigation" (116 U.S.App.D.C. at 365–366, 324 F.2d at 397–398) and expressed the view that the Milone rule might apply to require separate representation of the corporation and individual defendants.

62. Lewis v. Shaffer Stores Co., 218 F. Supp. 238 (S.D.N.Y.1963); Elberta Oil Co. v. Superior Court, 108 Cal.App. 344, 291 P. 668 (1930); Garlen v. Green Mansions, Inc., 9 A.D.2d 760, 193 N.Y.S. 2d 116 (1st Dep't 1959). See Essential Enterprises Corp. v. Dorsey Corp., 40 Del.Ch. 343, 182 A.2d 647 (1962); Hayman v. Morris, 37 N.Y.S.2d 884 (Sup.Ct.1942). Decisions contra, e. g., Hausman v. Buckley, supra note 28, must be disregarded under the Murphy rationale, discussed supra note 61.

63. 116 U.S.App.D.C. at 366, 324 F.2d at 398.

64. 113 U.S.App.D.C. at 210, 306 F.2d at 817.

his fiduciary obligations but must also assert any and all legitimate claims that, notwithstanding any violation adjudged, the organization is barred from attaching responsibility to him. But if—despite the constitutional amendment and other defensive events—breach of duty be found, counsel representing the International will be equally bound to seek from him restoration of the funds expended.[65] In that event the interests of the International and the officer would become seriously adverse, and the responsibilities of counsel irreconcilably conflicting, and, however forthright and objective counsel serving both may endeavor to be, the duality of the role would be untenable.[66]

█ A motion to disqualify counsel is the appropriate remedy for dual representation and the onset of the litigation the proper time for its presentation.[67] The motion of the trustees ad litem for disqualification will be granted and the International's proposed answer in intervention rejected.[68] The International's motion that it be dropped as a plaintiff and permitted to intervene as a defendant will be denied without prejudice to renewal by independent counsel appearing in its behalf.[69]

Counsel will present an appropriate order effectuating the Court's action consistently with this opinion.

**65.** "The lawyer owes 'entire devotion to the interest of the client, warm zeal in the maintenance and defense of his rights and the exertion of his utmost learning and ability,' to the end that nothing be taken or be withheld from him, save by the rules of law, legally applied. * * * In the judicial forum the client is entitled to the benefit of any and every remedy and defense that is authorized by the law of the land, and he may expect his lawyer to assert every such remedy or defense." American Bar Association, Canons of Professional Ethics 15.

**66.** "[A] lawyer represents conflicting interests when, in behalf of one client, it is his duty to contend for that which duty to another client requires him to

oppose." American Bar Association, Canons of Professional Ethics 6.

**67.** Milone v. English, supra note 5, 113 U.S.App.D.C. at 211, 306 F.2d at 818; Elberta Oil Co. v. Superior Court, supra note 62, 291 P. at 669.

**68.** Lewis v. Shaffer Stores Co., supra note 62, 218 F.Supp. at 240. In Murphy v. Washington American League Base Ball Club, supra note 23, 116 U.S.App.D.C. at 365 n. 7, 324 F.2d at 397 n. 7, it was suggested that a motion to strike the corporation's answer might be an appropriate remedy. See also Meyers v. Smith, supra note 36, 251 N.W. at 21; Slutzker v. Rieber, 132 N.J.Eq. 412, 28 A.2d 528, 530 (1942).

**69.** See Lewis v. Shaffer Stores Co., supra note 62, 218 F.Supp. at 240.